REUBEN W. ANDERSON, Plaintiff, Appellee, v. BOARD OF CIVIL
SERVICE COMMISSIONERS OF DES MOINES et al.,
Defendants, Appellants.

No. 45058.

MARCH 5, 1940.

F. T. Van Liew and Sam Orebaugh, for defendants, appellants.

Ted Sloane and Arthur Wallace, for plaintiff, appellee.

HAMILTON, C. J.—The substance of the charge laid against appellee, and for which he was removed from the police force, was his alleged failure to properly take care of his financial obligations. These consisted of debts owing at the time he came on the police force, September 16, 1933, and others since contracted. The evidence discloses the practice, on the part of some merchants and other classes of creditors in Des Moines,

Iowa, of using the police department as a sort of collecting agency for delinquent accounts against members of the police force in an effort to impound the officer's wages. This was true as to appellee.

The chief of police and some others in the department received letters and telephone calls and there were also some personal interviews, regarding appellee's unpaid bills; this extended pretty much over the entire time he was on the force. Usually, this annoyance occurred around the regular paydays. It was the custom of the chief, usually by letter, to call appellee's attention to these complaints and ask him to look after the account. This was a source of annoyance which required some time and effort and, to some slight extent, hampered or interfered with the service and furnished a subject for some criticism of the department by exasperated creditors for retaining on the force persons who are not prompt in paying their bills. It is interesting to note that these same creditors, as a rule, continued to permit further credit, perhaps, on the theory that they could be sure of their money by again turning the heat on the police department. After some 5 years of this sort of thing, during which time appellee, while apparently doing all that he was capable of doing in the way of cleaning up his old debts, yet, on account of a great amount of sickness in the family, new bills accumulated, was unable to make very much headway although he did reduce his total indebtedness some; meanwhile, the department, growing weary, decided to end the annoyance by discharging appellee and served notice on him accordingly.

The statutory procedure found in sections 5702 et seq., Code of 1935, was in a manner complied with resulting, finally, in the matter reaching this court. Claim was made by petitioner-appellee in the court below as to failure of compliance with statutory procedure and as to the use of hearsay testimony, but these were given little consideration by the trial court and we prefer to also skip these for what we consider to be the more serious matter.

Appellee Anderson was a civil service employee. He was also an honorably discharged soldier, entitling him to preference. No claim is made that he is not a man of good character or that he is not fully qualified in every way, under the

provisions of the law. The source of his difficulty lies in the fact that, for several years prior to his appointment as a policeman, he had not had steady employment and, to make matters worse, he was cursed with more than his fair share of sickness in his family, resulting in hospital and doctor bills and other debts aggregating, at the time of his appointment, about $2,500. In this situation wherein he attempted to pay off the old debts and meet ever-accumulating current bills, he has had his nose to the proverbial grindstone. His debts are not for luxuries, but, in the main, for necessities. They arose out of purely private matters in no way related to his services as a policeman. Nowhere in the record is he charged with ''misconduct or failure to properly perform his duties'', which, under code section 5702, constitute the statutory grounds for removal; neither is he charged with ''incompetency or misconduct'', which, under section 1163 of the Soldiers Preference Law, constitutes the only basis for removal. The burden of proving incompetency or misconduct rests on the party alleging the same. Code, section 1164. The charges made, which, on their face, purport to relate to purely private matters unrelated to his duties as an officer, must be supported by competent proof not only of the facts stated but that because of such facts his conduct may be said to fall within the grounds for removal found in the statutes above referred to.

The law is well settled in this state that, where the lower tribunal has jurisdiction and its findings are supported by competent evidence and it has otherwise acted legally, it is not for this court to review. If, however, the evidence is entirely lacking in support of the findings of the commission, then the question becomes one of law, and, under such circumstances, the action of the commission would not only be erroneous, but would amount to an illegality warranting a review by certiorari. Riley v. Crawford, 181 Iowa 1219, 165 N. W. 345; Luke v. Civil Service Commission, 225 Iowa 189, 279 N. W. 443; and Dickey v. Civil Service Commission, 201 Iowa 1135, 1139, 205 N. W. 961, 963. As stated in the last cited case:

''Section 5702, Code of 1924, *prohibits* the *arbitrary* removal of any person appointed from the civil service list which is furnished by the commission after proper examination of applicants, but authorizes such removal by a majority of such

1168

commission, after hearing, for *misconduct or failure to perform the duties assigned."* (Italics ours.)

Quoting further from the Dickey case:

"The rule which prevents the court, upon certiorari or by any other proceeding, from undue and meddlesome interference in the details of municipal government, is one so manifestly wise as to deserve and command general approval. If the law were such that every order of discharge or suspension or other measure of discipline intended to insure prompt and faithful discharge of duty by employees and ministerial officers generally could be dragged through the courts and set aside or nullified because the courts may disagree with the municipal authorities upon the merits of disputed questions of fact, discipline would be destroyed, and efficiency in public positions become a lost art."

 With this sentiment, we are still in full accord. Neither the Civil Service Statute nor the Soldiers Preference Law was intended as a cloak or shield to cover misconduct, incompetency or failure to perform official duties, but such laws were certainly intended to provide some protection and safeguard against arbitrary action of superior officers in removing or discharging such employees for reasons other than those named in the statutes. As has many times been said, the *public service* is at all times to be the criterion. In the case of Mohr v. Civil Service Commission, 186 Iowa 240, 245, 172 N. W. 278, 279, we said:

"The discharge is not for the purpose of punishing the officer, or depriving him of any of the emoluments of the office, but for the *protection of the public.* * * * A liberal construction should be given to the statute and to the rules and regulations, to the end that the *public safety* may not be imperiled. No policeman has any vested right to hold the office. He holds it always subject to *good behavior,* and is subject to removal whenever his *behavior is inimical to the public good. The commission is formed for the purpose of protecting the people from a continuance in office of men who are guilty of misconduct, or who have failed to properly perform their duties under such rules and regulations as may be adopted by the council."* (Italics ours.)

■ The Honorable Frank S. Shankland, presiding judge in the trial below, for many years a resident of Des Moines, Iowa, and active in civic affairs, examined the record, certified to him, of the hearing before the commission and, in deciding the case, made the following very pertinent observations and findings:

"According to the evidence submitted at said hearing, Mr. Anderson's superior officers complained of being annoyed by creditors who, being unable to collect from Anderson, resorted to the high pressure method of invoking the aid of public officials of the city to compel the policemen to pay their claims. To be besieged by creditors is annoying to any public official, but that is only one of the penalties inflicted upon those who hold public office. Debts should be paid, but in some instance the old doctrine of *caveat emptor* should be reversed. The Chief of Police, the Superintendent of Public Safety, and the Civil Service Commission are to be commended in their effort to maintain a high, clean moral standard in the police and fire departments. It is a matter of public knowledge that, with a few possible exceptions, the individual members of those departments are men of character, honesty and integrity. They are sound morally and their competency and fearlessness is unquestioned. In undertaking to regulate and direct the personal affairs of the individual members of these departments, however, superior officers should proceed with caution in this matter. If carried too far there is danger of offending the law as found in sections 13305 and 13306 of the Code of Iowa.

"The legislature has seen fit to exempt the personal earnings of the head of a family. The statutes also provide the municipal corporations shall not be garnished. Some creditors undertake to evade these statutes through indirect methods. Dead beats, human parasites and moochers in general constitute a public nuisance. They deserve no consideration and are unfit to be members of organized society. They are undesirable citizens and should have no place in the public service. However, the man who wants to meet his obligations and makes an honest attempt to do so, but is prevented from so doing on account of sickness or other misfortune or unforeseen contingencies, should be commended, not condemned.

"The record in this case shows that Mr. Anderson was

an honorable soldier and a capable and efficient police officer. That at the time he was appointed to the force he was indebted to the extent of approximately $2,500.00. That under an arrangement with creditors, made some time after he became a member of the police force, he was to pay $42.00 per month to be proportionately distributed among such creditors. That he has complied with such agreement except for the payment of one installment of $21.00 which was waived. The court further finds that notwithstanding the fact his wages are exempt under the law, he has paid the sum of $1,511.00 on the old debts. He has steadfastly refused to take advantage of the bankruptcy laws. On the other hand he has used his soldier's bonus of $600.00 in payment of debts. Money paid to soldiers as a bonus is exempt. It is not for the court to say whether in using his bonus money to pay for a dead horse, he acted wisely. He was not required by law to do so. That was a matter of individual conscience. However, the significance of it will not be overlooked by the court as bearing upon the good intentions of Mr. Anderson in his effort to pay his debts.

"The conclusion may be drawn from the facts disclosed, that Mr. Anderson is not a good financier; that he would not be a howling financial success as manager of a business enterprise; and that he does not have money sense. Evidently he does not realize as do some, the importance of the almighty dollar.

"His family consists of himself, a wife, and five children. He has had much sickness in his family. His children are subject to frequent attacks of pneumonia. His wife and three of his children have required hospital attention. All have required the services of doctors at various times. Medicine must be purchased and sick ones cared for. Mr. Anderson has made substantial and satisfactory payments on his old debts but because of his misfortunes new debts have been incurred, such as doctors' bills, hospital bills, etc. He is in a treadmill. It is difficult for him to make much progress. It appears that he is making an honest effort to pay everybody. he owes. He will no doubt succeed in this effort. It is difficult for a man to make financial progress when he is cursed by sickness, haunted by debt, hounded by creditors, and harassed by his superior

officers. He does not gamble or spend his money on wine or women.

"Under all the facts disclosed in the hearing on a review of this case, the court believes that the plaintiff, Reuben W. Anderson, was illegally discharged from the service of the police department and that he should be restored to such service with pay from the date of discharge. An order and judgment will be entered in accordance herewith."

We have carefully read and considered the evidence and arguments of counsel and are abidingly satisfied that, under the law and the facts, the trial court was right in finding that the discharge of appellee was arbitrary and, hence, illegal.

The record confirms what appellee's neighbors said of him —that he "is a very steady-going man and a man who spends practically all his spare time at home, that he is a good husband and father, that he has no bad habits." The record contains this stipulation:

"Reuben W. Anderson, is an average officer in the performance of his duties and that there are no charges or complaints of a serious character concerning his conduct as an officer except as shown by the record, except with respect to incurring and paying financial obligations."

Mr. Webster, secretary to the Credit Reference Bureau, through which appellee attempted to liquidate his indebtedness, stated that he would say appellee had done "fairly well", and Commissioner Guth, who chastized appellee quite severely at the time of the hearing, was forced to admit and did admit that appellee had done the best he could. The insinuation was made that the department changed appellee's beat because of his indebtedness. Our examination of the record convinces us that the change was not made because of inefficiency, misconduct or misbehavior of any kind bearing upon his duties as a policeman. Here is a part of a colloquy between Guth and appellee during the examination:

Appellee: "I have been a man and tried to do the best I could." Guth: "I will have to grant you that a hundred per cent." Appellee: "Thank you." At another point in the trial, Guth said, "* * * He does not dissipate his money * * * I think Reuben is a born poor manager."

In summing up the mass of testimony contained in a record of over 200 pages, the worst that can be said of appellee is that, —burdened as he was with $2,500 old and past-due indebtedness and the extraordinary expenses incident to sickness in the family, hounded on every payday by more creditors than he had salary to meet,—he did, occasionally, promise more than he could fulfill which was because of his failure to take into account other emergencies intervening and not because of any moral turpitude or intent to deceive. When you weigh against this the fact that he has never claimed any exemptions either of salary or government bonus; that, in attempting to finance through the Credit Reference Bureau, he permitted a large amount of old debts, which soon would have been outlawed, to be included in his debt budget; that he has not dissipated his money, but has applied it all on his debts and in payment of his current expenses in feeding, housing and caring for his family, any unbiased tribunal would be forced to conclude that any over or under statements made by him have been due to unforeseen events and not due to any attempt to defraud or mislead his creditors or the officers constituting the police department. As the trial court aptly said, "He is in a treadmill." With such a record, the fact that the police department volunteered to offer its good offices in assisting creditors, individually or through collecting agencies, in collecting personal debts arising out of purely personal relationships between the debtor and creditors and which bears no relationship to his service as an officer; and the department, through such voluntary aid, thereby suffers some inconvenience and annoyance, nevertheless, this should not be allowed as a valid charge of misconduct in office or behavior inimical to the public good, warranting the discharge of such officer from the public service.

The decision of the trial court is, accordingly, affirmed.—Affirmed.

STIGER, MILLER, SAGER, RICHARDS, HALE, and OLIVER, JJ., concur.