**SIOUX CITY POLICE OFFICERS' ASSOCIATION, a Public Employee Organization; Sioux City Professional Fire Fighter's Association, Local 7, International Association of Fire Fighters, a Public Employee Organization; and American Federation of State, County and Municipal Employees, Local 212, a Public Employee Organization, Appellants,**

v.

**CITY OF SIOUX CITY, Iowa, Appellee.**

No. 91–1779.

Supreme Court of Iowa.

Feb. 17, 1993.

Rehearing Denied March 26, 1993.

MacDonald Smith, Smith & Smith, Sioux City, for appellants.

James L. Abshier, City Atty., and C. Maurice Rawe, Asst. City Atty., Sioux City, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

This is a declaratory judgment action seeking to determine that an anti-nepotism resolution passed by the City of Sioux City affecting its employees is unlawful. The trial court denied plaintiffs' request for a declaratory ruling, holding that an exclusive remedy existed before the Public Employment Relations Board (PERB). On appeal by plaintiffs, we affirm in part and reverse in part.

Plaintiffs are three unincorporated associations whose members are all public employees of the City of Sioux City. They are the Police Officers Association, Firefighters Association, and Municipal Employees Association. These groups object to the anti-nepotism resolution, believing that it unlawfully infringes on their rights. The policy in question provides in part:

6. No individual shall be an applicant for a position in a department or be employed by a department of the city if a family relationship will be created by such employment.

7. No employee shall be promoted or transferred into a department if a family relationship will be created by such a promotion or transfer.

8. If a family relationship is created by the marriage or cohabitation of two employees, the two employees will be given the option of deciding who will transfer, if possible, or who will terminate employment. If the decision cannot be made by the two employees, department seniority shall be the deciding factor and the least senior employee shall be transferred, if possible; otherwise, the least senior shall be terminated. If a family relationship is created by marriage between an employee and a non-employee, the employee who became married must transfer, if possible, or terminate employment.

Family relationship is defined in the resolution as employment of two or more family members within the same department. Family members are listed as follows:

[M]other, father, brother, sister, spouse (including cohabiting couples), children, aunts, uncles, nieces, nephews, first cousins, mother-in-law, father-in-law, brother-in-law, sister-in-law, stepfather, stepmother, stepbrother, stepsister, stepchild, half-brother, half-sister, grandparent, grandchild, and legal guardian. Relationships created by adoption are included.

Those departments included are the legal department, employee relations, community development, finance, city clerk, city manager, utilities, public works, police including WCICC, fire including WCICC, art center, library, museum, transit, human rights, CCAT, and WCICC (including communication center personnel).

The City adopted the anti-nepotism resolution on August 13, 1990, by giving notice as required by Iowa Code chapter 21 (1989), but did not specifically address a notice to the plaintiff associations. On learning of the policy, plaintiffs filed this suit claiming the policy is illegal and invalid for these reasons:

1. The anti-nepotism policy is in irreconcilable conflict with Iowa Code sections 400.9 and 400.16–400.19 and is in excess of the City's "home rule" authority under Iowa Code sections 364.1–364.2, and Article III, Section 38A of the Iowa Constitution.

2. The anti-nepotism policy interferes with the association members' rights to associate and marry pursuant to the First and Fourteenth Amendments to the United States Constitution.

3. The unilateral adoption of the anti-nepotism policy violated the associations' rights to negotiate and bargain promotion and transfer procedures pursuant to Iowa Code section 20.9.

The petition does not allege immediate or irreparable harm to the associations or to their members nor are such allegations made in the statement of facts, which is stipulated. It is also clear that the associations did not request negotiation or bargaining on the issue of the anti-nepotism policy.

Although refusing to rule on the validity of the anti-nepotism resolution itself, the trial court opined that the City's act was within its "home rule" powers, did not vio-

late constitutional rights of the associations, and was not overbroad. We reverse on the issue of jurisdiction to render a declaratory ruling and affirm the trial court on the issues of statutory construction and alleged constitutional violations addressed herein.

Our scope of review of this action is based upon how the case was tried in the district court. *In re Mount Pleasant Bank & Trust Co.*, 426 N.W.2d 126, 129 (Iowa 1988). Since it was tried at law, we review for correction of errors at law. *Uffelman v. Fire Pension Bd.*, 424 N.W.2d 467, 467 (Iowa 1988).

## I. *Jurisdiction—declaratory judgment action.*

The City's anti-nepotism policy was created to address and alleviate management problems that the City perceived to potentially exist when family members are working in the same department. Mainly, these problems are defined as:

1. Favoritism in job assignment,
2. Favoritism in job promotion,
3. Favoritism in additional employment,
4. Favoritism in pay increase,
5. Creation of morale problems,
6. Reduced work productivity,
7. Increased absenteeism,
8. Conflicts of interest,
9. Problems in the administration of discipline.

Reliance by the City is placed on experts in the personnel management field who advise against allowing these family relationships to be created.

We note at the outset that the procedural posture of this case is unlike the majority of our cases in this area, which have come from a review of a decision by the Public Employment Relations Board (PERB). *See, e.g., Saydel Educ. Ass'n v. PERB*, 333 N.W.2d 486 (Iowa 1983); *City of Mason City v. PERB*, 316 N.W.2d 851 (Iowa 1982); *City of Fort Dodge v. PERB*, 275 N.W.2d 393 (Iowa 1979). In the case at bar, PERB is not a party nor is it the adjudicating agency, the case having been processed from a declaratory judgment petition filed initially in the district court pursuant to Iowa Rules of Civil Procedure 261–269. The thrust of plaintiffs' action is that the resolution condemning family relationships in departmental employment illegally interferes with their civil service employee rights, their freedom of association and marriage, and the right to bargain regarding promotion and job transfer procedures. None of these issues come from a grievance about a contractual provision involving the employees.

We have been careful in our jurisdictional procedures to have disputes decided initially by the agency in whose field of expertise the case lies. Our case of *Salsbury Laboratories v. Iowa Department of Environmental Quality*, 276 N.W.2d 830, 836–37 (Iowa 1979), discussed our rule on exhaustion of administrative remedies. We have returned jurisdiction to the agency when the procedure involved has avoided agency action although an adequate remedy was available through the agency. *See City of Des Moines v. Des Moines Police Bargaining Unit Ass'n*, 360 N.W.2d 729, 732–33 (Iowa 1985). Moreover, a district court's role is limited in reviewing agency action under section 17A.9 of our Code. In *PERB v. Stohr*, 279 N.W.2d 286, 290 (Iowa 1979), we held that the district court's authority allowed a review of PERB's refusal to issue a ruling but did not extend to deciding the merits of the controversy.

At the same time, we have recognized that the doctrine of exhaustion of administrative remedies has never been absolute. *See Salsbury*, 276 N.W.2d at 836; *Matters v. City of Ames*, 219 N.W.2d 718, 719–20 (Iowa 1974) ("Exhaustion is not required before every court challenge."). "If the agency is incapable of granting the relief sought during the subsequent administrative proceedings, a fruitless pursuit of these remedies is not required." *Salsbury*, 276 N.W.2d at 836; *Matters*, 219 N.W.2d at 719; 3 K. Davis, *Administrative Law* § 20.07 (1958). We have also held that the district court in a particular factual scenario may have concurrent jurisdiction with PERB. *Norton v. Adair County*, 441 N.W.2d 347, 354 (Iowa 1989) (action by

employee against union alleging violation of statutory duty of fair representation).

The Public Employment Relations Board generally has exclusive jurisdiction to determine negotiability issues under Iowa Code chapter 20. *City of Des Moines*, 360 N.W.2d at 732. It is appropriate for an agency in the first instance to interpret the statutes it administers. *Id.* When resolution of a controversy has been delegated to PERB, the district court has no original authority to declare the rights of parties or the applicability of any statute or rule. *Stohr*, 279 N.W.2d at 290. The district court's power to decide such issues is derived from and is dependent upon its authority to review PERB's action. *Id.; see, e.g., City of Dubuque v. PERB*, 444 N.W.2d 495, 497 (Iowa 1989) (court affirmed PERB's decision which concluded that evaluation procedure for police promotion was a mandatory subject of bargaining); *City of Des Moines*, 360 N.W.2d at 732 (court holds PERB is body to determine negotiability disputes in the first instance); *Saydel Educ. Ass'n*, 333 N.W.2d at 489 (court affirms PERB ruling that criteria including skill, ability, and experience to be considered by school district in connection with transfer or staff reductions was a mandatory subject of bargaining). Our cases have assumed that the administrative declaratory ruling remedy for negotiability disputes must be exhausted before resort to the courts. *Id.; Stohr*, 279 N.W.2d at 290.

At trial, the associations argued that the anti-nepotism policy affected promotion and transfer procedures, which the associations argue are mandatory subjects of bargaining pursuant to Iowa Code section 20.9. *See City of Dubuque*, 444 N.W.2d at 497; *Saydel Educ. Ass'n*, 333 N.W.2d at 489. As mandatory subjects of bargaining, the associations argue that the City was required to negotiate in good faith with them pursuant to Iowa Code section 20.9. Failure to do so, they argue, is a prohibited practice and invalidates the policy. Iowa Code § 20.11.

We have dealt with similar language used in sections 20.7 and 20.9 in several cases. *See Northeast Community Sch. Dist. v. PERB*, 408 N.W.2d 46, 50–51 (Iowa 1987); *Aplington Community Sch. Dist. v. PERB*, 392 N.W.2d 495, 498–99 (Iowa 1986); *Saydel Educ. Ass'n*, 333 N.W.2d at 489. Recently, in *City of Dubuque*, we discussed what is involved in deciding if a topic is subject to the mandatory bargaining directives of section 20.9. There, we said:

> We recognize that in some situations we will look at the predominant characteristics of a proposal in determining if it is a mandatory bargaining subject under Iowa Code section 20.9. However, our recent decisions in *Northeast, Aplington* and *Saydel* clearly establish that the identification of criteria used by the employer to determine staff reduction and transfer falls within the mandatory subject of evaluation procedures. Our analysis and reasoning in these decisions is equally applicable to this case involving the criteria and procedures used by the employer to determine promotion.

444 N.W.2d at 497. The criteria considered in *City of Dubuque* come from a memorandum put out by the City for use in selecting persons for promotion to the position of police corporal. The memorandum detailed an extensive list of points for grading by police supervisors of a candidate's performance and specified how much supervision was required to evaluate a candidate. We held that these detailed procedures and listing of criteria for judging performance were "evaluation procedures" included by section 20.9 as matters subject to mandatory bargaining. Our cases of *Northeast, Aplington* and *Saydel* support the reasoning that a listing of criteria establishes an evaluation procedure under section 20.9 that thereby mandates consideration of the issue through mandatory bargaining. In all three cases a comprehensive statement of factors to be considered in reaching a decision on an issue was included.

These cases differ in this regard from the case at bar. There are no criteria set up by the City of Sioux City that would constitute an "evaluation procedure" or a "transfer procedure" under the provisions

of section 20.9 for implementing the anti-nepotism resolution. The resolution's predominant characteristic is that it is self-acting. If an employee marries or cohabits with another employee, the resolution automatically determines the result. There is nothing to negotiate on how the policy would be applied to a particular situation or what factors should be included in a determination of the outcome in a given case. The result of violating the anti-nepotism resolution does not depend on the input from any other employees or any outside source. Because of the nature of the topic, it is not subject to the mandatory bargaining provision of section 20.9. Consequently, we hold that the resolution here falls within the provisions of section 20.7, in which the legislature has granted to public employers the exclusive power to hire, transfer and discharge public employees.

Our holding on this point removes this case from the exclusive jurisdictional sphere of PERB wherein issues of mandatory bargaining are reserved.

■ Our next concern is whether PERB is the most appropriate tribunal to hear this case. Plaintiffs' challenge to the anti-nepotism policy is heavily based on statutory and constitutional arguments. They claim the policy violates the Iowa Constitution as in excess of "home rule" powers, is an unconstitutional restraint on the right to marry, and is unconstitutionally overbroad. It is apparent that the ultimate relief sought by the plaintiff associations is not to negotiate procedures to implement the anti-nepotism policy, but to have the policy declared invalid. That decision is properly for the courts to decide rather than PERB.

This case presents exactly the kind of "fruitless pursuit" of unavailable remedies that necessitates an exception to the exhaustion doctrine. *See Salsbury*, 276 N.W.2d at 836. PERB cannot provide an adequate remedy for the issues raised by plaintiffs. *Cf. City of Des Moines*, 360 N.W.2d at 731–32 (concerned validity of a provision in a collective bargaining agreement). Plaintiffs are correct in invoking the district court jurisdiction initially by means of a declaratory judgment action.

*Cf. Hollinrake v. Iowa Law Enforcement Academy*, 452 N.W.2d 598 (Iowa 1990) (academy's establishing minimum vision requirements for police officer position did not constitute "disability" that invokes Civil Rights Commission jurisdiction).

II. *The anti-nepotism policy provisions and the City's "home rule" powers.*

■ The associations urge that the City's anti-nepotism policy is invalid as in excess of the City's "home rule" powers. The associations argue that the resolution cannot stand because it is in irreconcilable conflict with Iowa Code sections 400.9, 400.16, 400.17, 400.18 and 400.19. We disagree.

Article III, Section 38A of the Iowa Constitution provides:

Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs in government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly.

The rule or proposition of law that a municipal corporation possesses and can exercise only those powers granted in express words is not a part of the law of this state.

*See also* Iowa Code §§ 364.1–364.2. This "Home Rule Amendment" grants municipal corporations broad authority to regulate matters of local concern, subject to preemptions by the laws of the General Assembly. *City of Des Moines v. Gruen*, 457 N.W.2d 340, 341 (Iowa 1990); *City of Council Bluffs v. Cain*, 342 N.W.2d 810, 812 (Iowa 1983).

■ A municipality may enact an ordinance on matters which are also the subject of state statutes, unless the ordinance invades an area of law reserved by the legislature to itself. *Id.* A municipality is free to set standards "more stringent than those imposed by state law, unless state law provides otherwise." Iowa Code § 364.3(3); *Gruen*, 457 N.W.2d at 343. Finally, limitations on a municipality's power

over local affairs are not implied; they must be imposed by the legislature. *Id.; Bryan v. City of Des Moines*, 261 N.W.2d 685, 687 (Iowa 1978).

A city has the power to enact an ordinance on a matter which is also the subject of statute if the ordinance and statute can be harmonized and reconciled. *Cain*, 342 N.W.2d at 812. A municipal ordinance is "inconsistent" with a law of the General Assembly and, therefore, preempted by it, when the ordinance prohibits an act permitted by a statute, or permits an act prohibited by a statute. *Gruen*, 457 N.W.2d at 342; *Cain*, 342 N.W.2d at 812. In considering a claim that a city ordinance violates "home rule" powers, we interpret the state law in such a manner as to render it harmonious with the ordinance. *See* Iowa Code § 364.2(3); *Gruen*, 457 N.W.2d at 342; *Green v. City of Cascade*, 231 N.W.2d 882, 890 (Iowa 1975). If the statute and ordinance cannot be reconciled, the statute prevails. *Id.*

The associations argue that the City's anti-nepotism policy creates qualifications for employment, promotion, transfer, and discharge which are not authorized by the specified sections in Iowa Code chapter 400 regarding civil service employment. While chapter 400 includes some criteria which *must* be considered and some criteria which *must not* be considered in employment action, the Iowa legislature did not intend the chapter to provide the exclusive basis for employment decisions. A civil service employer may impose additional qualifications and criteria. *See Hollinrake*, 452 N.W.2d at 601 (court recognized authority to determine minimum fitness for deputy sheriff position through the establishment of vision standards); *Borlin v. Civil Service Comm'n*, 338 N.W.2d 146, 149 (Iowa 1983) (court recognized authority of municipality to establish restrictions on secondary employment); *Bryan*, 261 N.W.2d at 685 (court recognized authority to establish minimum educational requirement was within the city's power to establish qualifications for promotion in the police department).

Iowa Code section 400.9 gives the civil service commission the power to conduct promotional examinations for the purpose of "determining the qualifications of applicants for promotion to a higher grade under civil service." This section does not expressly preclude the City from adopting *additional* criteria for qualification and promotion. In *Bryan*, we stated "[p]assing a promotional examination is essential to a promotion but is not made the exclusive measure of qualifications.... We hold the civil service commission's sole prerogative to give promotional examinations does not constitute exclusive authority to establish promotional qualifications." We held that the City of Des Moines could require its police officers to have some college education to be eligible for a promotion. We believe that *Bryan* controls in this case; the civil service commission's power to conduct promotional exams does not expressly prohibit the City of Sioux City from adopting additional criteria for promotion.

Iowa Code section 400.16 provides: "All appointed officers and employees of the City shall be selected with reference to their qualifications and fitness for the good of the public service, and without reference to their political faith or party allegiance." Iowa Code section 400.17 requires that all civil service employees have passed a civil service examination and been certified as eligible for appointment, and also are found (1) of good moral character, (2) able to read and write the English language, and (3) not a liquor or drug addict. Section 400.16 provides two minimum criteria which must be considered, qualification and fitness for the good of public service, and two criteria which must not be considered, political faith and party allegiance. The section does not expressly limit considerations *solely* to "qualification" and "public good"; additional criteria may be considered. *See Bryan*, 261 N.W.2d at 687. The anti-nepotism policy places a limitation on family relationships in the work place and does not involve political faith or party allegiance.

■ Section 400.17 provides additional *minimum* qualifications for civil service employment and again does not expressly limit the public employer's ability to establish additional criteria not prohibited elsewhere. *Id.* Section 400.17 expressly prohibits public employers from discrimination based on "political or religious opinions or affiliations, race, national origin, sex, or age." Anti-nepotism is not implicated in these express limitations.

■ Iowa Code sections 400.18 and 400.19 govern removal, demotion, suspension, and discharge of civil service employees. Section 400.18 begins, "[n]o person holding civil service rights as provided in this chapter shall be removed, demoted, or suspended *arbitrarily*" and provides that neglect of duty, disobedience, misconduct, and failure to properly perform one's duties may be grounds for such action. (Emphasis added.) In addition to the grounds for action against an employee listed in sections 400.18 and 400.19, other reasons for adverse action are valid when those reasons are not arbitrary. *See Anderson v. Board of Civil Serv. Comm'rs,* 227 Iowa 1164, 1168, 290 N.W. 493, 494 (1940) (civil service removal statute is intended to provide some protection and safeguard against arbitrary action by superior officers in removing police officer for reasons *other* than those named in the statute); *see also Bevel v. Civil Serv. Comm'n,* 426 N.W.2d 380, 382 (Iowa 1988) (primary purpose of section 400.19 is to protect employees from arbitrary sanctions or discharge by their supervisors or elected officials); *Borlin,* 338 N.W.2d at 146 (failure to discontinue secondary employment after police chief's request was detrimental to the public service, warranting dismissal of disobedient police officer).

The City presented evidence that the existence of familial relationships in the workplace can pose management problems and cause employee conflict. The City must determine the best working environment for promoting public good and establish qualifications for employment and criteria for discharge which will foster that environment. The City presented evidence that

familial relationships in the workplace can present conflicts detrimental to the public good. The associations do not argue that the City's belief is arbitrary. The City provided notice to all affected employees, which insures the employees an opportunity to consider the qualification in personal decisions. We also note that no individual stands as a "victim" of the policy to argue that it was arbitrarily applied as to him or her. We therefore find that the anti-nepotism policy is not arbitrary action as prohibited by sections 400.18 and 400.19.

Having found the City adopted additional grounds for removal and discharge of employees that are not arbitrary, and the anti-nepotism policy does not violate Iowa Code chapter 400, we hold that its adoption does not violate the City's "home rule" powers. The policy stands valid on this ground.

III. *Constitutional challenges.*

A. *Right to marry.* The associations also challenge the anti-nepotism policy as an unconstitutional imposition on the right to privacy as guaranteed by the due process clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 9 of the Iowa Constitution. The associations contend that the policy provision which prevents spouses from working in the same department unconstitutionally impedes the right to marry.

■ The right to privacy means the freedom of choice to engage in certain activities, and included among the narrow scope of protected activities is the right to marry. *See State v. Hartog,* 440 N.W.2d 852, 854–55 (Iowa), *cert. denied,* 493 U.S. 1005, 110 S.Ct. 569, 107 L.Ed.2d 563 (1989). In *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010, 1018 (1967), the United States Supreme Court said, "the freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness of free men." Although a fundamental right, the Court in *Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618, 631 (1978), did not require rigorous adherence to "strict scrutiny" analysis for all marriage regulations.

"When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Id.* at 388, 98 S.Ct. at 682, 54 L.Ed.2d at 631. Any reasonable law, regulation, or policy which does not "significantly interfere with the decisions to enter the marriage relationship may legitimately be imposed." *Id.* at 386, 98 S.Ct. at 673, 54 L.Ed.2d at 631; *see also Califano v. Jobst,* 434 U.S. 47, 53–54, 98 S.Ct. 95, 99–100, 54 L.Ed.2d 228, 235 (1977).

■ Sioux City's anti-nepotism policy does not deny city employees the right to marry. The policy only prohibits the employment of married persons within the same department. The rule prevents the creation of an employment situation in which conflicts of interest or favoritism may inhibit optimal job performance or employee morale.

This distinguishes this case from those in which the burden on the right to marry has been substantial and therefore struck down as unconstitutional. *Loving,* 388 U.S. at 12, 87 S.Ct. at 1824, 18 L.Ed.2d at 1018 (Virginia miscegenation law unconstitutional); *Zablocki,* 434 U.S. at 390, 98 S.Ct. at 683, 54 L.Ed.2d at 633 (state law requiring residents to pay child support and obtain court permission before marrying unconstitutional). We believe that this policy meets the review in *Zablocki,* that "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may be legitimately imposed." *Id.* at 386, 98 S.Ct. at 681, 54 L.Ed.2d at 631.

The City's desire to promote the public good in civil service employment by controlling the possible conflicts which nepotism presents is legitimate. The anti-nepotism policy which restricts spouses from employment in the same department is a reasonable regulation toward that end. While the policy may require coworkers who wish to marry to confront difficult choices, the policy is not a direct and substantial infringement on the right to marry. *See Parsons*

*v. County of Del Norte,* 728 F.2d 1234, 1237 (9th Cir.), *cert. denied,* 469 U.S. 846, 105 S.Ct. 158, 83 L.Ed.2d 95 (1984) (no-nepotism rule in county sheriff's department upheld under constitutional challenge against right to marry); *Cutts v. Fowler,* 692 F.2d 138, 141 (D.C.Cir.1982) (anti-nepotism rule in FCC upheld against right to marry challenge by career civil servant); *Keckeisen v. Independent Sch. Dist. 612,* 509 F.2d 1062, 1065 (8th Cir.), *cert. denied,* 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51 (1975) (no-spouse rule in administrator-teacher situations upheld); *Miller v. C.A. Muer Corp.,* 420 Mich. 355, 365, 362 N.W.2d 650, 654 (1984) (anti-nepotism policy imposed by private industry upheld); *Cybyske v. Independent Sch. Dist. No. 196,* 347 N.W.2d 256, 263 (Minn.), *cert. denied,* 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984) (anti-nepotism policy upheld against constitutional challenge to an infringement on the right to marry in teacher-school board situation); *Hamilton v. Board of Trustees of Oconee County,* 282 S.C. 519, 524, 319 S.E.2d 717, 720 (Ct. App.1984) (no-nepotism policy upheld in right to marry constitutional challenge by teacher and superintendent); *Townshend v. Board of Educ.,* 183 W.Va. 418, 422, 396 S.E.2d 185, 189 (1990) (no-spouse rule constitutional in challenge by married teacher and administrator).

■ B. *Overbreadth.* The associations also challenge the anti-nepotism policy as unconstitutionally overbroad. We have said that a statute is unconstitutionally overbroad

if it attempts to achieve a governmental purpose to control or prevent activities constitutionally subject to state regulation by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.

*City of Maquoketa v. Russell,* 484 N.W.2d 179, 181 (Iowa 1992) (quoting *State v. Pilcher,* 242 N.W.2d 348, 353 (Iowa 1976)). The overbreadth analysis is further confined to the alleged denial of First Amendment rights. *Id.; Moose Lodge # 107 v. Irvis,* 407 U.S. 163, 168, 92 S.Ct. 1965, 1969, 32 L.Ed.2d 627, 634 (1972). The chilling of

these rights must be substantial. *City of Maquoketa,* 484 N.W.2d at 181; *Parker v. Levy,* 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439, 460 (1974). The Fourteenth Amendment of the United States Constitution protects the First Amendment liberties from encroachment by the states. *City of Maquoketa,* 484 N.W.2d at 181; *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1217–18 (1940).

The associations have failed to specifically point to which First Amendment right the anti-nepotism policy infringes as overbroad, arguing instead that a less onerous means of controlling the problems of familial relationships in the workplace exists. The right to public employment is not a fundamental right. *Bennett v. City of Redfield,* 446 N.W.2d 467, 473 (Iowa 1989). The associations have made a general constitutional argument that the freedom of association is impermissibly curtailed, therefore we consider their overbreadth contention on this ground. *Cf. City of Maquoketa,* 484 N.W.2d at 184 ("The First Amendment also protects as a fundamental right the freedom to engage in associations for the advancement of economic, religious, or cultural matters."). Freedom of association is a "basic constitutional freedom" that is "closely allied to freedom of speech and a right which, like freedom of speech, lies at the foundation of a free society." *Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659, 691 (1976).

The associations cite *Bretz v. City of Center Line,* 88 Mich.App. 451, 276 N.W.2d 617 (1979), which held that a city-wide anti-nepotism policy was unconstitutionally overbroad. However, the policy in *Bretz* prohibited hiring which created an immediate family relationship with another employee of *any* public body. The anti-nepotism policy prevented employment of family members regardless of the position or department. The Michigan appellate court did not believe that the policy was reasonably related to the "laudable and necessary" objective of the legislation and was overbroad. *Id.* at 455, 276 N.W.2d at 618.

We are persuaded that the instant anti-nepotism policy is more like the policy upheld in *Winrick v. City of Warren,* 99 Mich.App. 770, 299 N.W.2d 27 (1980), by the Michigan appellate court the year after it decided *Bretz.* The court applied the "middle-level scrutiny" of equal protection analysis, asking whether the anti-nepotism provision had a fair and substantial relationship to a laudable legislative purpose. *Id.* at 773–74, 299 N.W.2d at 29. The court compared the City of Warren's anti-nepotism policy to that in *Bretz* and found that the more precisely drafted policy which banned only *intra-departmental* family relationships passed constitutional muster. *Id.*

The anti-nepotism policy in the case at bar forwards an important governmental objective of promoting the public good by preventing the opportunity for conflict of interest and favoritism in city employment. The policy is narrowly drawn, preventing familial or spousal relationships only within the same department. It does not prevent employment in any other Sioux City department where no such relationship would be created. The policy also provides that the opportunity to transfer, if possible, will always be afforded an employee before he or she will be required to terminate employment. Finally, the policy does not apply to any family relationship existing or possible through promotion before adoption of the policy. Although the policy does not restrict only supervisory relationships, as the associations suggest a more narrowly tailored provision might, conflicts may arise if familial relationships among coworkers create problems, and a coworker could become supervisory if promoted. *See Winrick,* 99 Mich.App. at 775, 299 N.W.2d at 29. We find that the Sioux City anti-nepotism policy is a legitimate regulation of the city employment environment and is narrowly drawn so as not to impermissibly invade the employees' freedom of association.

Our analysis convinces us that the anti-nepotism policy adopted by the City of Sioux City was a lawful exercise of its authority and is not invalid for any of the reasons discussed herein as challenged by plaintiffs. The subject matter was proper-

ly within the district court's jurisdiction pertaining to declaratory judgment actions and has been so treated by us.

AFFIRMED IN PART AND REVERSED IN PART.

All Justices concur except HARRIS and LAVORATO, JJ., who concur in divisions II, III, and the result.