CITY OF DES MOINES, Appellant,

v.

CIVIL SERVICE COMMISSION OF the CITY OF DES MOINES, Iowa, Appellee,

and

Jerry O. Smith, Intervenor–Appellee.

No. 94–1394.

Supreme Court of Iowa.

Nov. 22, 1995.

Nelda Barrow Mickle, City Solicitor, Des Moines, for appellant.

Nolden Gentry of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellee.

Charles E. Gribble and Pamela J. Prager of Whitfield & Eddy, P.L.C., Des Moines, for intervenor-appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and SNELL, JJ.

McGIVERIN, Chief Justice.

The main question presented is whether a city civil service commission has jurisdiction to hear an appeal of a city firefighter discharged for a nondisciplinary reason. We believe the commission does have jurisdiction to entertain the appeal, and, therefore, we affirm the district court's order annulling a writ of certiorari issued in connection with the City's challenge to the commission's jurisdiction.

I. *Background facts and proceedings.* The present dispute arises from the plaintiff City of Des Moines' discharge of intervenor fire captain Jerry O. Smith from the Des Moines fire department.

The City hired Smith in June 1960. He worked in the City's public safety department, fire division, as a permanent, civil service employee for many years. The fire department is required to provide its fire personnel, such as Smith, with self-contained breathing apparatuses to be used at fire scenes.

In 1988, the City established a pulmonary function and cardio-pulmonary exercise test for new applicants and current employees. The standards were integrated into the fire department's system on the advice of the City's doctor, Dr. Steven Zorn, and a former fire chief.

The fire department's medical evaluation program is intended to ensure that its fire personnel assigned to fire suppression duty have sufficient cardio-pulmonary fitness to safely perform such duties while wearing a self-contained breathing apparatus. The fire department utilizes the spirometry test and, for those failing that test, an exercise stress test to determine whether each firefighter can safely perform fire suppression duties while wearing a self-contained breathing apparatus.[1]

Smith first failed the fire department's spirometry test in 1988, but passed the test each year from 1989–91. In August 1992, Smith failed the spirometry test and the stress test and was placed on sick leave

---

1. The exercise stress test measures the ability of the heart and lungs to act together to utilize oxygen to produce the energy necessary to safely perform fire suppression duty while wearing a self-contained breathing apparatus.

effective September 1992. In January 1993, Smith failed the exercise stress test again and was allowed to remain on sick leave until he reached service retirement age in April 1993.

In March 1993, the City filed an application for ordinary disability retirement benefits on behalf of Smith with the Municipal Fire and Police Retirement System (MFPRS). *See* Iowa Code § 411.6(3) (1993). MFPRS denied the City's application on the ground that Smith had no physical incapacity that hindered his performance.

After the City's appeal of the decision was denied, the City stated to Smith that MFPRS's decision left Smith only two options: either (1) Smith could apply for service retirement pursuant to Iowa Code section 411.6(1), or (2) the City would have to discharge Smith for failure to meet the fire department's medical standard for cardiopulmonary fitness. In a letter to Smith, fire chief Charles Morgan stated Smith had failed to meet the fire department's standard for more than a year, and there was no expectation that he would be able to meet the standard in the future.

In November, the City extended Smith's sick leave for forty-five days to allow him to seek service retirement, for which Smith ultimately declined to apply.

In June 1994, the City advised Smith he was being put on leave of absence, without pay but with benefits, until July 1. The City advised Smith to apply for service retirement prior to July 1 and, if he did not, the City would terminate his employment after that date.

On July 18, after a pre-termination hearing, the City terminated Smith's employment. The City dismissed Smith solely for failure to meet the fire department's medical standard for cardio-pulmonary fitness necessary for assignment to wear a self-contained breathing apparatus and safely perform the fire suppression duties of his job. It is undisputed that Smith does not meet the fire department's cardio-pulmonary fitness standard and has not met the standard since August 1992.

Smith appealed his discharge to the Civil Service Commission of Des Moines (commission) claiming his discharge was arbitrary and in violation of Iowa Code chapter 400. In response, the City filed a written specification of the charges and grounds upon which Smith's termination was based. *See* Iowa Code § 400.22. The City also filed a motion to dismiss Smith's appeal, contending the commission lacked jurisdiction over the matter.

After the commission overruled the City's motion to dismiss and set Smith's appeal for hearing, the City filed a petition for writ of certiorari with the district court. *See* Iowa R.Civ.P. 306, 309. Smith filed a petition of intervention on the side of the commission. *See* Iowa R.Civ.P. 75. In its petition for the writ, the City claimed the commission acted in excess of its statutory authority, *see* Iowa Code § 400.27, by denying the City's motion to dismiss and setting Smith's appeal for hearing. A writ of certiorari was granted. *See* Iowa R.Civ.P. 309.

After a hearing, *see* Iowa R.Civ.P. 315, the district court annulled the writ of certiorari, *see* Iowa R.Civ.P. 316, holding the commission had jurisdiction and authority, under Iowa Code chapter 400, to determine whether Smith's discharge was arbitrary.

The court also held the commission had authority to rule whether or not the City's medical standard, pursuant to which the City discharged Smith, was arbitrary.

The City appealed the district court's judgment that annulled the writ of certiorari. *See* Iowa R.Civ.P. 318. Several issues are presented concerning the jurisdiction and propriety of the commission to hear an appeal from a nondisciplinary discharge of a civil service employee.

■ II. *Standard of review.* A certiorari action shall be by ordinary proceedings, so far as applicable. Iowa R.Civ.P. 317. Our review of this certiorari action is for correction of errors at law. *Iowa Dep't of Transp. v. Iowa Dist. Court for Woodbury County,* 488 N.W.2d 174, 175 (Iowa 1992). We will sustain a writ of certiorari where the commission acted beyond its authority or jurisdiction. *See* Iowa R.Civ.P. 306; *cf. Iowa*

*Dep't of Transp. v. Iowa Dist. Court for Poweshiek County,* 530 N.W.2d 725, 726 (Iowa 1995).

III. *Applicability of Iowa Code chapter 400 to nondisciplinary terminations of civil service employees.* The City contends Iowa Code chapter 400 does not confer jurisdiction on the city civil service commission to entertain appeals of civil service employees discharged for nondisciplinary reasons. Smith is such an employee and the City discharged him for failure to meet a fire department medical fitness standard. He was not discharged for a disciplinary reason. *See* Iowa Code § 400.19.

The City premises its argument on two theories: (a) Iowa Code section 400.27 confers jurisdiction on the commission to hear and determine only rights of civil service employees *arising under* chapter 400 and Smith's discharge did not arise under chapter 400; and, in the alternative, (b) Iowa Code section 400.20 permits appeals by civil service employees *arising only* from *disciplinary* suspensions, discharges, and demotions. We consider the arguments in turn.

■ A. Iowa Code section 400.27 is chapter 400's general jurisdiction provision, which states in relevant part:

The civil service commission has jurisdiction to hear and determine matters involving the rights of civil service employees *under this chapter,* and may affirm, modify, or reverse any case on its merits.

(Emphasis added.) The City first contends that the statute's language "under this chapter," which was added by the legislature in 1986, *see* 1986 Iowa Acts ch. 1138, § 9, shows legislative intent to restrict the scope of the commission's jurisdiction in a manner that would preclude hearing Smith's appeal of his nondisciplinary discharge. We disagree. Our decision in *Schulz v. City of Davenport,* 444 N.W.2d 479, 481 (Iowa 1989) addressed this amendment. In *Schulz,* we stated that we were "less than certain ... that this amendment added much to the meaning of the statute as applied to employee appeals." *Id.* Based on this statement in *Schulz,* we conclude that the legislative history of Iowa Code section 400.27 does not preclude the

commission's jurisdiction to hear Smith's appeal.

■ Furthermore, because Smith has a right, as interpreted by our case law, *see Anderson v. Board of Civil Serv. Comm'rs,* 227 Iowa 1164, 1168, 290 N.W. 493, 494 (1940), to not be arbitrarily discharged "under this chapter," we believe that his nondisciplinary discharge plainly arises within the jurisdictional parameters of Iowa Code section 400.27. *See id.* (civil service removal statute is intended to provide some protection and safeguards against arbitrary actions by superior officers in removing civil service employees *for reasons other than those named in the statute* ); *see also Sioux City Police Officers' Ass'n v. City of Sioux City,* 495 N.W.2d 687, 695 (Iowa 1993) (citing *Anderson* ).

B. The City's alternative argument is premised on the scope of Iowa Code section 400.20. Section 400.20 only relates to the commission's appellate jurisdiction and provides:

The suspension, demotion, or discharge of a person holding civil service rights may be appealed to the civil service commission within fourteen calendar days after the suspension, demotion, or discharge.

By way of further comparison, Iowa Code section 400.19, which enumerates four types of disciplinary discharges invocable by a fire chief, is narrower in scope than section 400.20 which applies broadly to *all* suspensions, demotions and discharges of civil service employees. *See* Iowa Code §§ 400.19, 400.20.

■ As a civil service employee, Smith has rights arising under Iowa Code chapter 400. Therefore, the plain language of Iowa Code section 400.20 gives Smith the right to appeal to the commission if he is suspended, demoted, or discharged, regardless of the reason for the discharge. *Cf. Benson v. Fort Dodge Police Pension Bd.,* 374 N.W.2d 392, 394 (Iowa 1985) (civil service commission entered ruling on civil service police officer's appeal of his nondisciplinary discharge without a jurisdictional challenge being raised). Our rules of statutory construction require this conclusion. *See, e.g., In re Estate of Allgood,*

509 N.W.2d 486, 487 (Iowa 1993) (when a statute is clear, the court need look no further than to the express terms of the statute); *In re Estate of Millers,* 159 N.W.2d 441, 443 (Iowa 1968) (when interpreting the meaning of a statute, courts are required to interpret the language fairly and sensibly in accordance with the plain meaning of the words used by the legislature). If we were to limit the scope of Iowa Code section 400.20 solely to appeals of disciplinary discharges, as the City urges, we would wrongfully add language to the statute unambiguously drafted by the legislature. *See State v. Hesford,* 242 N.W.2d 256, 258 (Iowa 1976) ("[n]o court, under the guise of judicial construction, may add words of qualification to the statute in question or change its terms."). Iowa Code section 400.20 does not state only *disciplinary* suspensions, demotions, and discharges of persons holding civil service rights may be appealed. *See* Iowa Code § 400.20. The legislature could have drafted the statute in such a fashion but it did not. *See State ex rel. Miller v. Santa Rosa Sales & Mktg., Inc.,* 475 N.W.2d 210, 218 (Iowa 1991) (legislative intent is expressed by omission as well as by inclusion).

■ In addition, we believe the City's interpretation of Iowa Code section 400.20, whereby it would limit the commission's jurisdiction to hearing appeals of only disciplinary discharges, would lead to an unreasonable result. *See* Iowa Code § 4.4(3) (a "just and reasonable result" is intended to follow a statute's enactment). There is no logical or meaningful distinction between disciplinary and nondisciplinary discharges for appeal purposes. *See General Elec. Co. v. Iowa State Bd. of Tax Review,* 492 N.W.2d 417, 420 (Iowa 1992) (cautioning courts interpreting statutes to avoid strained, impractical or absurd results).

■ In sum, as we stated in *General Electric,* "[when] a statute is clear and plain, there is no room for construction." *Id.* We conclude Iowa Code section 400.20 applies to all civil service employee discharges, not merely to the enumerated disciplinary discharges set forth in Iowa Code sections 400.18 and 400.19.

■ Therefore, the district court did not err by ruling that the commission had general jurisdiction over Smith's appeal of his nondisciplinary discharge from the fire department.

IV. *Authority of the commission to determine whether the medical standard adopted by the City was arbitrary.* The City further argues the commission does not have authority to determine whether the fire department's cardio-pulmonary fitness standard that led to Smith's discharge was arbitrary.

■ It is clear that a civil service employer, such as the fire department, may impose employment qualifications and criteria beyond the qualifications for employment, promotion, transfer, and discharge authorized in Iowa Code chapter 400. *Sioux City,* 495 N.W.2d at 695 (holding Sioux City's anti-nepotism policy was not an arbitrary action prohibited by Iowa Code sections 400.18 and 400.19); *Bryan v. City of Des Moines,* 261 N.W.2d 685, 687 (Iowa 1978) (holding the civil service commission's sole prerogative to give promotional examinations did not constitute exclusive authority to establish promotional qualifications). A civil service employer's power to impose additional employment qualifications is especially important in the area of fire fighting. *See Miller v. Sioux Gateway Fire Dep't,* 497 N.W.2d 838, 842 (Iowa 1993) (stating, in the interest of public safety, a fire department may require its firefighters to meet a high standard of physical fitness and it is critical that every firefighter be able to perform his or her duties at a moment's notice). The merits of such employment qualifications must not, however, be shielded from scrutiny. *See, e.g., Sioux City,* 495 N.W.2d at 695; *Bryan,* 261 N.W.2d at 687 (seven police officers unsuccessfully challenged the city's additional educational requirements for promotions).

In the *Sioux City* case, public civil service employees brought a declaratory judgment action challenging the city's recently passed anti-nepotism resolution. *Sioux City,* 495 N.W.2d at 690. Unlike the present case, there was no individual civil service employee claiming he or she was a victim of the employment qualification. *Id.* at 695. Holding the anti-nepotism policy was not arbitrary,

we suggested that an allegedly victimized civil service employee could argue that a certain employment qualification is arbitrary. *Id.* Such a suggestion implicitly indicates the commission has jurisdiction to assess whether a challenged employment qualification is arbitrary.[2]

In the present case, all parties agree that Smith failed to comply with the fire department's medical standard. If Smith is prohibited from challenging the standard as arbitrary, he is left without a forum to challenge his discharge. We do not believe such a result is consistent with an important purpose of Iowa Code chapter 400, which is to allow a discharged civil service employee an opportunity to challenge his or her discharge as arbitrary. *See Sioux City*, 495 N.W.2d at 695; *Anderson*, 227 Iowa at 1168, 290 N.W. at 494. Furthermore, if the commission did not have authority to assess the merits of a particular employment standard, civil service employees could be discharged pursuant to arbitrary rules without recourse. Such a result would be unjust. *See* Iowa Code § 4.2 (requiring statutes to be liberally construed with a view to promote their objects and assist the parties in obtaining justice).

 It is true that Smith could have chosen to challenge the merits of the fire department's medical standard *prior to* his discharge by way of a declaratory judgment action, *see* Iowa R.Civ.P. 261, as did the civil service employees in *Sioux City. See Sioux City*, 495 N.W.2d at 693–95. However, we also believe Smith can properly challenge the standard, as arbitrary, as applied in his particular case in an appeal of his nondisciplinary discharge under Iowa Code section 400.20 as he did in this case. *See id.* at 695.

 Therefore, we conclude that when a civil service employee is discharged for failure to meet a civil service employer's employment qualification or standard, the commission has jurisdiction to decide whether the standard under which the employee was discharged is arbitrary.

V. *Authority of the commission to determine whether the City's decision to terminate Smith was arbitrary.* The City further contends that the commission's jurisdiction is limited to determining whether Smith was, in fact, discharged for failure to meet the fire department's cardio-pulmonary fitness standard. The City argues the commission does not have jurisdiction to determine whether the City's decision, that Smith did not meet the requirements of the standard, was arbitrary.

 We disagree with the City and conclude that a discharged employee, such as Smith, can challenge, as arbitrary, a civil service employer's decision that he or she failed to meet the particular employment qualification or standard. We believe the purpose of the commission is to make such decisions.

> [One of the commission's dual purposes is] to protect civil service employees in their jobs or positions as long as they are not guilty of misconduct or failure to perform their duties . . . . No civil service employee may be arbitrarily discharged or suspended by his superiors. He has a right to appeal to the Commission, which has power, after a hearing, to set aside or overrule a capricious removal. *The Commission is protection and a shield to the civil service employee against an arbitrary or capricious removal.*

*Misbach v. Civil Serv. Comm'n*, 230 Iowa 323, 327, 297 N.W. 284, 286 (1941) (emphasis added); *see Bevel v. Civil Serv. Comm'n*, 426 N.W.2d 380, 382 (Iowa 1988) ("[w]e no longer tolerate the 'spoils system' ").

 Iowa Code section 400.18 and our case law also defeat the City's argument. The commission has exclusive jurisdiction

---

2. The City claims that the fire department's cardio-pulmonary fitness standard, which Smith failed and was the reason for his discharge, is mandated by federal law and fire suppression safety guidelines and, therefore, the commission should not be permitted to second-guess the standard. Smith vigorously claims the particular standard is not mandated by federal law or other safety guidelines. We believe that if the standard is indeed mandated by federal statutory law or other guidelines, the City can present this evidence before the commission during Smith's appeal of his discharge. The commission may consider this evidence in determining whether the standard is arbitrary.

over civil service employee discharges. *Devine v. City of Des Moines*, 366 N.W.2d 580, 582 (Iowa 1985), *overturned by statute*, 1986 Iowa Acts ch. 1118, § 1.[3] After the commission has ruled, appeal therefrom is to the district court. *Id.* The clearly established standard for assessing the appropriateness of *any* civil service employee's discharge is for the commission to determine whether the action was arbitrary. *See* Iowa Code § 400.18; *City of Des Moines v. Civil Serv. Comm'n*, 513 N.W.2d 746, 748 (Iowa 1994); *Sioux City*, 495 N.W.2d at 695; *Bevel*, 426 N.W.2d at 382; *Devine*, 366 N.W.2d at 582; *Misbach*, 230 Iowa at 327, 297 N.W. at 286; *Anderson*, 227 Iowa at 1168, 290 N.W. at 494. In *Sioux City* and *Anderson*, we stated the civil service chapter was intended to prevent discharges for any arbitrary reason, including discharges for reasons *other than* those named in the statute. *Sioux City*, 495 N.W.2d at 695; *Anderson*, 227 Iowa at 1168, 290 N.W. at 494. A nondisciplinary discharge is a discharge for a reason other than one stated in Iowa Code sections 400.18 and 400.19 and must not be arbitrary.

▮ Therefore, we conclude the commission has authority to determine whether the City's decision to terminate Smith was arbitrary.

VI. *Scope of Iowa Code section 372.15.* Lastly, the City contends that Smith could have sought a public hearing to contest his discharge pursuant to Iowa Code section 372.15 and that section 400.20 did not apply to his case. Iowa Code section 372.15 provides in pertinent part:

**Removal of appointees.**

Except as otherwise provided by state or city law, *all persons appointed to city office may be removed* by the officer or body making the appointment, but every such removal shall be by written order. The order shall give the reasons, be filed in the office of the city clerk, *and* a copy shall be sent by certified mail to *the person*

*removed* who, upon request filed with the clerk within thirty days of the date of mailing the copy, *shall be granted a public hearing* before the [city] council on all issues connected with the removal.

(Emphasis added.) In response, the commission and Smith argue that an Iowa Code section 372.15 hearing is only available to non-civil service employees. *See Borschel v. City of Perry*, 512 N.W.2d 565, 568 (Iowa 1994) (non-civil service police officer given notice of his right to request a hearing before the city council); *Bennett v. City of Redfield*, 446 N.W.2d 467, 471–72 (Iowa 1989) (non-civil service city employee given public hearing pursuant to section 372.15 to contest the reasons for his discharge); *Westphal v. City of Council Bluffs*, 275 N.W.2d 439, 445 (Iowa 1979) (discharged non-civil service city clerk would have had a right to a section 372.15 removal hearing had he been "removed" within the meaning of the statute); *LaPeters v. City of Cedar Rapids*, 263 N.W.2d 734, 736–37 (Iowa 1978) (discharged non-civil service police chief had a right to contest discharge in an Iowa Code section 372.15 hearing but not through civil service procedures set forth in chapter 400).

On its face, the statute only applies to removal of "all persons appointed to city office." *See* Iowa Code § 372.15. In general, Iowa Code chapter 372 is entitled "Organization of City Government." Division II of chapter 372 is entitled "City Officers." *See id.* §§ 372.13–372.15. Within this chapter, appointees include persons such as those chosen by the city council members to fill city vacancies, *see id.* § 372.13(2)(a), city clerks, *see id.* § 372.13(3), and city managers, *see id.* § 372.13(4).

▮ We agree with the commission and Smith and find the hearing provision of Iowa Code section 372.15 is not applicable to discharged civil service fire captains such as Smith. Thus, we conclude appointees envi-

---

**3.** In *Jones v. Des Moines Civil Service Commission*, 430 N.W.2d 106, 108 (Iowa 1988), we stated that "it is apparent that the legislature overturned our holding in *Devine*." The 1986 amendment to Iowa Code section 20.18 provided that public employees covered by civil service, as well as other employees, shall follow grievance procedures provided in any applicable collective bargaining agreements. *See* 1986 Iowa Acts ch. 1118, § 1. As there are no grievance procedures of a collective bargaining agreement at issue in the present case, the fact that *Devine* was subsequently overturned by statute is irrelevant for purposes of resolving the present dispute.

sioned under section 372.15 do not include civil service employees. *Cf. Borschel,* 512 N.W.2d at 568; *Bennett,* 446 N.W.2d at 471–72; *Westphal,* 275 N.W.2d at 445; *LaPeters,* 263 N.W.2d at 736–37.

■ We also believe that Iowa Code chapter 400 is a specific statute and, therefore, takes precedence over Iowa Code section 372.15 in appeals concerning the discharge of a civil service employee such as Smith. *See* Iowa Code § 4.7.

Therefore, we conclude Smith, a civil service employee, properly appealed his discharge under Iowa Code chapter 400.

■ VII. *Conclusion.* For the above stated reasons, we affirm the district court's ruling that annulled the writ of certiorari. We conclude the commission does have jurisdiction to hear Smith's appeal of his nondisciplinary discharge and all matters in connection with his discharge. We also conclude that the commission has authority to determine whether the medical standard, pursuant to which the City discharged Smith, is arbitrary.

**AFFIRMED.**