# IN THE SUPREME COURT OF IOWA

No. 08–0596

Filed January 8, 2010

STEVEN C. LEWIS,

    Appellee,

vs.

CIVIL SERVICE COMMISSION OF THE
CITY OF AMES, IOWA AND CITY OF AMES,
IOWA,

    Appellants.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Story County, Michael J. Moon, Judge.

Appeal from judgment reversing civil service employee's termination. **COURT OF APPEALS JUDGMENT VACATED; DISTRICT COURT JUDGMENT REVERSED.**

Judith K. Parks, Assistant City Attorney, Ames, for appellants.

Jay M. Smith and MacDonald Smith of Smith & McElwain Law Office, Sioux City, for appellee.

**STREIT, Justice**.

Steven Lewis, a former civil service employee, argues the City of Ames arbitrarily terminated his employment. The city terminated Lewis from the public works department because Lewis's driver's license was suspended for six months after an arrest for operating while intoxicated. We uphold the termination because Lewis failed to maintain his driver's license, which was required for his position.

## I. Background Facts and Prior Proceedings.

Lewis was employed in the public works department, street operations division, of the City of Ames as a maintenance worker. He had worked for the public works department for eighteen years. On June 3, 2006, Lewis was arrested for operating while intoxicated (OWI). Lewis's license was suspended from September 8, 2006 until March 8, 2007.

Lewis told the director of the public works department of his OWI arrest and later informed the director his license would be suspended for six months. Maintenance workers were required to have a class "A" or "B" commercial driver's license (CDL). Representatives from the human resources department, the city manager's office, and the public works department held several meetings to determine whether and how Lewis should be disciplined. Eventually, the public works department alerted Lewis in writing that the city was planning to terminate his employment, told him the reason for this determination, and scheduled a pre-disciplinary hearing. After the pre-disciplinary hearing, the city terminated Lewis's employment on September 7, 2006.

Lewis appealed his termination to the City of Ames Civil Service Commission. The commission upheld the termination. Lewis then appealed to the district court, which, after trial, overturned the

termination and held it was arbitrary. The court of appeals affirmed the district court and the commission sought further review.

## II. Scope of Review.

This court reviews the district court's decision de novo. *Civil Serv. Comm'n v. Johnson*, 653 N.W.2d 533, 537 (Iowa 2002). We give weight to the district court's findings but are not bound by them. *Dolan v. Civil Serv. Comm'n*, 634 N.W.2d 657, 662 (Iowa 2001). "[W]e independently construe the factual record as a whole to determine if the [] discipline was warranted." *City of Des Moines v. Civil Serv. Comm'n*, 513 N.W.2d 746, 748 (Iowa 1994) (emphasis omitted).

## III. Merits.

Iowa Code chapter 400 (2005) controls civil service employment within the state. Iowa Code section 400.18 provides that civil service employees cannot be terminated arbitrarily:

> No person holding civil service rights as provided in this chapter shall be removed, demoted, or suspended arbitrarily, except as otherwise provided in this chapter, but may be removed, demoted, or suspended after a hearing by a majority vote of the civil service commission, for neglect of duty, disobedience, misconduct, or failure to properly perform the person's duties.

Section 400.19 allows the city manager[1] to "peremptorily suspend, demote, or discharge a subordinate then under the person's . . . direction for neglect of duty, disobedience of orders, misconduct, or failure to properly perform the subordinate's duties."

After an employee has been suspended, demoted, or discharged, the employee may appeal to the civil service commission, which "may affirm, modify, or reverse any case on its merits." Iowa Code § 400.27.

---

[1]Section 400.19 refers to "[t]he person having the appointing power as provided in this chapter." Section 400.15 notes that in cities under a city manager plan, the city manager has appointing power.

Further appeal to the district court is then allowed for "trial de novo." *Id.* We have held the statutory language permitting a trial de novo allows either party to introduce evidence that was not introduced before the commission. *Dolan*, 634 N.W.2d at 662 ("[I]n a trial de novo, the court hearing the case anew is permitted to receive evidence additional to that presented to the commission.") The trial de novo also "normally permit[s] the district court to select [from] the same remedies that were available before the commission." *Id.* "Throughout the trial court and appellate court proceedings, the commission has the burden of showing that the discharge was statutorily permissible," *Smith v. Des Moines Civil Serv. Comm'n*, 561 N.W.2d 75, 77 (Iowa 1997), and we give no weight to or presumption in favor of the commission's determination. *Sieg v. Civil Serv. Comm'n*, 342 N.W.2d 824, 828 (Iowa 1983). Instead, this court "independently construe[s] the factual record as a whole to determine if the [employee's] discipline was warranted." *City of Des Moines*, 513 N.W.2d at 748 (emphasis omitted). Here, the factual record consists of testimony and exhibits entered before the district court.

It is improper for a civil service employee to be removed, demoted, or suspended for reasons other than those found in sections 400.18 and 400.19: neglect of duty, disobedience, misconduct, or failure to properly perform the person's duties. *See Smith*, 561 N.W.2d at 79 (holding employee's failure of medical examination did not constitute inability to perform job duties where exam was not part of a standardized personnel policy and therefore discharge was inappropriate); *Clay v. City of Cedar Rapids*, 577 N.W.2d 862, 865 (Iowa Ct. App. 1998) (holding employee's refusal to enter office of superior who had previously touched employee inappropriately was not misconduct and therefore did not support discharge). Similarly, this court has authority to reject sanctions that

are disproportionate to the employee's improper conduct and impose a different disciplinary sanction. *Dolan,* 634 N.W.2d at 663 ("[W]e are also entitled to modify the Commission's decision on our de novo review if we conclude suspension was the more appropriate sanction in this case.").

The legislature did not define the terms "neglect of duty, disobedience, misconduct, or failure to properly perform the person's duties." Iowa Code §§ 400.18, 400.19. In determining whether an employee's actions fall within these categories, "we may look to the [department's] own rules and prescribed code of conduct as well as existing precedent for guidance." *Dolan,* 634 N.W.2d at 663. We have referred to department policies in support of an employee's termination. *Id.* We have also relied on the lack of a standard policy in reversing a termination decision. *In re Fairbanks,* 287 N.W.2d 579, 582 (Iowa 1980). In *Fairbanks,* this court held an auto mechanic could not be terminated because of his refusal to submit to a polygraph exam, noting that "such a condition does not appear within the work description of an Auto Mechanic I." *Id.*

The city terminated Lewis based on its miscellaneous policy 20.3. Miscellaneous policy 20.3, entitled "Maintenance of Credentials," states:

> The maintenance of qualifications is the responsibility of every employee and is an essential function of all City jobs. As a condition of continuing employment, an employee must maintain all licenses or certification credentials specified in the current class specification for the employee's job, or required by federal, state, or City law. An employee shall notify the department head immediately in the event of loss of a required credential. Failure to maintain required credentials shall be considered grounds for termination of employment.

The policy further addresses the appropriate discipline, based on a variety of circumstances, for a failure to maintain credentials. Policy 20.3 states an employee who does not maintain a required credential

"shall be terminated" where the activity requiring a credential is the "core defining function of the job" or "[t]he department is unwilling to allow the employee to continue to work because of cost, lost productivity or other negative impact." If the activity is not the defining function of the job, the employee may be granted an unpaid leave of absence or be allowed to continue working without performing that activity.

City officials discussed the appropriate response to Lewis's failure to maintain his driver's license according to policy 20.3. These city officials included the director of public works, the director of human resources in the city manager's office, the assistant city manager, the city manager, the division head for the streets division, and the supervisor for the streets division. These city employees testified they decided to terminate Lewis because they concluded maintenance of a driver's license was a "core defining function" of his job position, and therefore, termination was the appropriate response to Lewis's failure to maintain a license. The city relies on the job description of maintenance worker for its determination that driving is a "core defining function of the job." The job description for maintenance worker frequently emphasizes the driving involved in the position:

> Examples of Essential Job Functions: Drives and operates trucks, tractors, and other motorized equipment with various attachments . . . .
>
> Equipment Essential to the Job: A variety of motor vehicles and heavy equipment including pick-up trucks, dump trucks, aerial boom trucks, end loaders and backhoes . . . .
>
> Licenses and Certificates: Must possess a valid type A or B Commercial Driver's License depending on assignment . . . .

The streets department has seven single-axle dump trucks, three tandem-axle dump trucks, one road grader, one loader, three backhoes, and two pickups with plows on them which employees are expected to

operate. City officials who testified emphasized that Lewis's license was suspended during much of the winter season, which was problematic because snow removal from the streets is a significant portion of the maintenance worker position during that time of year. The city considered whether there were any alternative duties within the public works department that Lewis could perform during the time period in which his license was revoked and did not find anything "suitable or acceptable."

The director of human resources testified the city officials also felt termination was appropriate because the city policy provided for employee termination if the department is "unwilling to allow the employee to continue work because of cost, lost productivity or other negative impact." Under this provision, those involved did not believe it was appropriate to displace another employee to accommodate Lewis.

Lewis argues there were a number of ways the city could have accommodated his license revocation without terminating his employment and therefore his termination was arbitrary. Lewis introduced evidence that the city could have placed him on unpaid leave during the period in which his license was revoked. At the time Lewis was terminated, there were two maintenance worker positions available and after his termination, a third became available. At the time of trial, by which time Lewis's license had been reinstated, the city continued to list a maintenance worker position as available, demonstrating that the city had not found a suitable replacement for Lewis's position.

Lewis also argues the city could have continued to employ him during his license suspension. First, he introduced evidence that the number of snow days was limited and that other work did not require a driver's license, such as equipment maintenance, cleaning storm drains,

or coal-patching on the roads where employees traveled in groups of two. Second, he introduced evidence that pickup trucks were used by maintenance workers for various tasks, including snow removal, that an ignition interlock device could have been installed on one of the pickup trucks, and that Lewis could have obtained a temporary permit to drive vehicles with an ignition interlock device. Third, Lewis testified that he was a long-term employee, having worked for the public works department for eighteen years and had a good work record.

Based on our de novo review, we hold the city's termination of Lewis was warranted. In reaching this conclusion, we rely on the rule that in determining whether dismissal is warranted, "we must remember the primary objective of section 400.19 is to protect the public interest." *Dolan*, 634 N.W.2d at 664. Lewis's failure to maintain his driver's license, a credential necessary to his position, fell within "neglect of duty, disobedience, misconduct, or failure to properly perform the person's duties" as required for termination under Iowa Code sections 400.18 and 400.19. "Although the statute uses the language 'failure to properly perform the person's duties,' . . . a reasonable interpretation of that language would authorize a discharge based on future inability to adequately or safely perform one's duties . . . ." *Smith*, 561 N.W.2d at 78 (quoting Iowa Code § 400.18). The job description for maintenance workers requires the employee to maintain a driver's license, and the city policy provides that termination may result where employees do not maintain the necessary credentials. Lewis's failure to maintain his driver's license led to an inability to adequately perform those duties of his maintenance-worker job that required driving. Given Lewis's inability to perform the job requirement of driving and his failure to maintain the

necessary credentials required by city policy, even though only temporarily, his termination was warranted.

## IV. Conclusion.

The city's decision to terminate Lewis for failure to maintain required credentials was warranted under Iowa Code sections 400.18 and 400.19.

**COURT OF APPEALS JUDGMENT VACATED; DISTRICT COURT JUDGMENT REVERSED.**