# IN THE SUPREME COURT OF IOWA

No. 15–1131

Filed June 9, 2017

Amended August 25, 2017

**LARRY SHAWN WHITWER,**

Appellee,

vs.

**CIVIL SERVICE COMMISSION OF THE CITY OF SIOUX CITY, IOWA,**

Appellant.

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

A civil service commission appeals a district court's reinstatement of a civil service employee after he was terminated pursuant to a last-chance agreement. **REVERSED.**

Justin Vondrak, Assistant City Attorney, Sioux City, for appellant.

Jay E. Denne of Munger, Reinschmidt & Denne, LLP, Sioux City, for appellee.

**MANSFIELD, Justice.**

This case requires us to determine the enforceability of a so-called "last-chance agreement" entered into by a civil service employee. After a municipal firefighter pled guilty to domestic abuse assault, the municipality offered to discipline him with a short suspension instead of terminating his employment. However, in exchange, the municipality insisted that the firefighter agree to give the municipality discretion to terminate him immediately and without appeal if he violated the law again or violated the related no-contact order. The firefighter accepted the municipality's proposal and signed the written last-chance agreement.

Just over a year later, the firefighter violated the no-contact order related to the domestic abuse assault. When the city terminated his employment in reliance on the agreement, the firefighter attempted to appeal his termination to the civil service commission. The commission declined to hear his appeal. On judicial review, however, the district court reinstated the firefighter. The district court ruled that the last-chance agreement was not valid because the commission had not approved or reviewed it before the parties entered into it.

On appeal, we now reverse the district court. Consistent with the authority in other jurisdictions, we conclude that a civil service employee may enter into a valid last-chance agreement. Such an agreement, however, remains subject to principles of contract law, such as the duty of good faith and fair dealing. Accordingly, we do not decide whether a last-chance agreement can be used to terminate a civil service employee when there has been a significant lapse of time or the breach is de minimis or unrelated to the reason for the agreement.

## I. Background Facts and Proceedings.

For over twenty years, Larry Whitwer served as a firefighter with the Sioux City Fire Department. In July 2012, Whitwer was arrested for an assault. He later pled guilty to domestic abuse assault in violation of Iowa Code section 708.2A(2)(*a*) (2013). At sentencing, the court granted Whitwer a deferred judgment. The court also extended a previously entered no-contact order for five years. *See id.* § 664A.5. On September 26, the day after Whitwer pled guilty, he was placed on administrative leave from the fire department, with pay, and a predisciplinary hearing was scheduled for October 5.

Before that hearing, Fire Chief Tom Everett spoke with Dan Cougill, a representative from the firefighters' union, about the appropriate discipline for Whitwer's actions. Although Whitwer could have been terminated, Everett and Cougill discussed the possibility of Whitwer signing a last-chance agreement. Under the agreement, Whitwer would not be terminated because of the domestic abuse assault guilty plea and he would instead serve a short suspension. Whitwer would agree, among other things, to abide by the no-contact order and consent to immediate termination if he violated that order. Whitwer would also be required to waive the right to appeal if he were later terminated under the last-chance agreement. In an email sent September 27, Chief Everett noted that he "spoke for some time [with Cougill] about . . . what exactly the last chance means." Chief Everett and Cougill then separately discussed the proposed discipline and last-chance agreement with Whitwer's personal attorney.

Meanwhile, Connie Anstey, an attorney for the City of Sioux City (City), drafted the two-page document titled "Disciplinary Agreement" in anticipation of the hearing. The agreement provided that it would be a

"complete resolution to the disciplinary action relating to incidents which took place on or about July 21, 2012." The agreement then included several provisions that "Whitwer, the Sioux City Professional Fire Fighter's Association, and the City of Sioux City agree to . . . in lieu of Mr. Whitwer's immediate termination:"

1. The City agrees that the only disciplinary action which will be taken regarding the alleged misconduct . . . is contained in this agreement unless this agreement is breached by Mr. Whitwer. In the event of breach of this agreement by Mr. Whitwer, the City reserves the right to impose further disciplinary action up to and including immediate termination.

2. That Mr. Whitwer shall be subject to transfer at the sole discretion of the Fire Chief and shall receive a five (5) shift suspension from work without pay for violation of Sioux City Fire Rescue Rules and Regulations . . . .

. . . .

5. That Mr. Whitwer shall strictly abide by all court issued no contact orders in Woodbury County Case No. . . . , and shall not, either while on duty or off duty violate the court imposed no contact order in person, by telephone or through the use of third parties.

. . . .

7. That this agreement is a last chance agreement and as such, it is agreed that Mr. Whitwer may be terminated from his employment with the City without cause and without appeal rights under the labor agreement between the City and Union or under the provisions of the Iowa Civil Service laws at any time following the execution of this agreement. It is understood that Mr. Whitwer may be immediately terminated under this provision for any violation of the law (excluding simple misdemeanor traffic or parking tickets), violation of the no contact order, violation of Fire Department Rules and Regulations or the City Administrative Policies which may occur during this agreement.

8. The Union and Mr. Whitwer specifically waive all claims, disputes, appeals and grievances which have arisen or which may arise from the discipline given Mr. Whitwer pursuant to this Agreement.

Due to scheduling conflicts, the hearing was moved forward to October 1.[1]  On that day, Chief Everett, Anstey, and Bridey Hayes, director of human resources for the City, were in attendance on behalf of the City.  Cougill and a second representative from the firefighters' union were present, as was Whitwer.  Whitwer's personal attorney was not at the meeting, although neither Whitwer nor the union asked that the meeting be continued for that reason.

All parties understood that the purpose of the hearing was to review the last-chance agreement.  After that review, Whitwer could either sign the agreement or be terminated for the domestic abuse assault guilty plea.  Chief Everett read aloud the entire agreement and asked Whitwer if he had any questions.  Whitwer was given time to study the document.  The union representatives asked to discuss the agreement in private with Whitwer.  City officials honored the request and left the room.  When they returned, Whitwer and the union representatives had several questions relating to the proposed shift suspensions.  Chief Everett asked Whitwer if he had any other questions about the agreement, and Whitwer replied that he did not.  At that point, Whitwer, Chief Everett, and Cougill each signed five copies of the agreement.  Whitwer then became emotional and apologized.  Chief Everett responded to Whitwer, "[W]e really want you to be successful."

For the next thirteen months, Whitwer continued to work as a firefighter without incident.  However, in November 2013, police were dispatched on reports that Whitwer was texting and attempting to meet with and otherwise reach the victim in violation of the no-contact order.

---

[1]The October 1 hearing was audio recorded and is a part of the record in this case.

Officers reviewed an actual text message, confirmed the no-contact order was still active, and arrested Whitwer. On November 18, Whitwer appeared before the district court and admitted to violating the no-contact order. The court found him in contempt and sentenced him to two days in jail with credit for time served. A separate job-related hearing was held on November 22 and Whitwer was terminated from the Sioux City Fire Department for violating the last-chance agreement.

Whitwer appealed his termination to the Sioux City Civil Service Commission pursuant to chapter 400, which governs the rights of civil service employees. *See id.* § 400.18(1). However, the Commission declined to determine whether Whitwer was properly terminated because of the waiver-of-appeal provision in the last-chance agreement. Although Whitwer claimed that he was under duress and suffering from depression when he signed the agreement, the Commission determined it had no authority to hear the appeal.

Whitwer appealed the Commission's decision to district court. *See id.* § 400.27. At the district court hearing, several City employees testified regarding the City's use of last-chance agreements. Bridey Hayes explained that the agreements are not prescribed in the City code or administrative regulations. Instead, the decision of whether to offer a last-chance agreement is at the discretion of human resources, the City attorney's office, and the relevant department head. Connie Anstey testified that when a last-chance agreement is appropriate, the City uses a form agreement which is then tailored to the circumstances involved. For instance, Anstey elaborated that if the last-chance agreement is based on criminal conduct, the agreement will require no further violations of the law. Anstey stated that the waiver-of-appeal provision is a "standard provision" in the form agreement. Anstey emphasized that

the decision to offer a last-chance agreement depends on the circumstances of the misconduct, the disciplinary options available, and the employee's work history. Finally, Anstey acknowledged that there was no end-date for the last-chance agreement in this case.

Chief Everett confirmed that if Whitwer had declined to sign the last-chance agreement on October 1, 2012, he would have been terminated at that meeting. Everett explained that public trust was extremely important to the fire department, and a violation of law "begins to chip away or erode that public trust and certainly speaks to integrity and decision-making." Chief Everett also observed that last-chance agreements, when appropriate, are generally beneficial to the fire department because the department "put[s] a lot into these individuals," and a last-chance agreement allows the employee to "see what they've done and make corrections moving forward so that they can continue to serve in a manner that's . . . highly ethical."

Following trial, the district court filed a written ruling reinstating Whitwer to his position with the Sioux City Fire Department. The court emphasized that offering a last-chance agreement is "entirely in the discretion of the city." In the court's view, using the agreement to terminate Whitwer "essentially circumvented the public policy which forms the basis for the establishment of a Civil Service Commission," specifically, protection of civil service employees from arbitrary termination. The court continued,

> The decision to offer a last chance agreement is just as central in this process as the decision to terminate the employee, and can be just as easily abused or manipulated. It is precisely this discretion that should be subject to review by the Defendant Commission and approval or denial based upon their role as a neutral evaluator of the facts in each case.

Therefore, the court found,

> [The] Commission must be permitted to make such a determination prior to the offering of a last chance agreement or it must be permitted to approve a last chance agreement in order to perform one of its essential purposes. If Defendant Commission is not allowed to do so, the intent of the legislature in passing the civil service commission legislation would be defeated. Civil service legislation was designed to assure that municipal employees were being employed and retained based on their skills and qualifications, and not due to any prohibited ground for consideration, such as favoritism or nepotism. As applied to the facts here, the Commission must be allowed to verify that no employee is subjected to arbitrary termination, regardless of the device used to terminate or continue employment.

(Citation omitted.)

The Commission appealed, and we retained the appeal.

## II.  Standard of Review.

Our review of the district court's decision is de novo. *Lewis v. Civil Serv. Comm'n*, 776 N.W.2d 859, 861 (Iowa 2010). "Although we give weight to the findings of the district court, we are not bound by them." *Dolan v. Civil Serv. Comm'n*, 634 N.W.2d 657, 662 (Iowa 2001). Further, "[w]e confine our review to the record made in the district court." *Id.* Thus, "we do not receive new evidence" and "we limit our review to the same issues that were raised in the district court." *Id.*

## III.  Analysis.

**A.  Validity of Last-Chance Agreements.**  Civil service employees are entitled to a variety of rights arising under Iowa Code chapter 400, including the right not to be arbitrarily discharged and the right to seek review of a discharge. *See City of Des Moines v. Civil Serv. Comm'n*, 540 N.W.2d 52, 56 (Iowa 1995). In this case, we are asked whether a civil service employee may prospectively waive those rights through a last-chance agreement that avoids termination proceedings.

We begin with a review of the relevant statutes.[2] Iowa Code section 400.18 establishes that a civil service employee

> shall not be removed, demoted, or suspended arbitrarily, except as otherwise provided in this chapter, but may be removed, demoted, or suspended after a hearing by a majority vote of the civil service commission, for neglect of duty, disobedience, misconduct, or failure to properly perform the person's duties.

Iowa Code § 400.18(1); *cf. id.* § 400.19 (allowing the "chief of the fire department [to] peremptorily suspend, demote, or discharge a subordinate" for the same grounds). Section 400.20 specifies that any such discipline "may be appealed to the civil service commission within fourteen calendar days after the suspension, demotion, or discharge." *Id.* § 400.20. At the hearing before the commission, the employee has the right to be represented by counsel or a union representative, *id.* § 400.18(3), and proper notice must be given, *id.* § 400.23. A civil service commission has jurisdiction "to hear and determine matters involving the rights of civil service employees under [chapter 400], and may affirm, modify, or reverse any case on its merits." *Id.* § 400.27.

We have long recognized these statutes protect a civil service employee such as Whitwer from being arbitrarily discharged. *City of Des Moines*, 540 N.W.2d at 56; *accord Anderson v. Bd. of Civil Serv. Comm'rs*, 227 Iowa 1164, 1168, 290 N.W. 493, 494 (1940); *see also Lewis*, 776 N.W.2d at 862 ("It is improper for a civil service employee to be removed, demoted, or suspended for reasons other than those found in sections 400.18 and 400.19 . . . ."). The commission review process, therefore, serves to protect employees "as long as they are not guilty of misconduct

---

[2]The general assembly recently amended several provisions of chapter 400. *See* H.F. 291, 87th G.A., 1st Sess. §§ 55–63 (Iowa 2017). We are deciding this case based on the version of chapter 400 in effect when Whitwer's employment was terminated.

or failure to perform their duties." *Misbach v. Civil Serv. Comm'n*, 230 Iowa 323, 327, 297 N.W. 284, 286 (1941). Review by a commission "does not exist to change the issues or scope of the original termination decision." *Dolan*, 634 N.W.2d at 665. Instead, the main thrust of commission review is to determine whether the decision to terminate a civil service employee, for either a disciplinary or nondisciplinary reason, was arbitrary. *City of Des Moines*, 540 N.W.2d at 59; *Misbach*, 230 Iowa at 327, 297 N.W. at 286 ("The commission is protection and a shield to the civil service employee against an arbitrary or capricious removal.").

Chapter 400 further provides for judicial review of an employee's termination:

> The city or any civil service employee shall have a right to appeal to the district court from the final ruling or decision of the civil service commission. The appeal shall be taken within thirty days from the filing of the formal decision of the commission. The district court of the county in which the city is located shall have full jurisdiction of the appeal and the said appeal shall be a trial de novo as an equitable action in the district court.
>
> . . . .
>
> In the event the ruling or decision appealed from is reversed by the district court, the appellant, if it be an employee, shall then be reinstated as of the date of the said suspension, demotion, or discharge and shall be entitled to compensation from the date of such suspension, demotion, or discharge.

Iowa Code § 400.27. We have distinguished the phrase "trial de novo," which appears in this statute, from mere review de novo. *See Sieg v. Civil Serv. Comm'n*, 342 N.W.2d 824, 828 (Iowa 1983). In a trial de novo, the district court "hear[s] the case anew" and may receive evidence not presented to the commission. *Dolan*, 634 N.W.2d at 662. Ultimately, "the objective of a trial de novo is to permit the district court to independently determine whether the sanction imposed by the

commission was warranted." *Id.* at 663. Consequently, a district court—and by extension, this court on review—may modify any disciplinary decision of the Commission. *Id.*; *see also Lewis*, 776 N.W.2d at 862 ("[T]his court 'independently construe[s] the factual record as a whole to determine if the [employee's] discipline was warranted.' " (second and third alterations in original) (quoting *City of Des Moines v. Civil Serv. Comm'n*, 513 N.W.2d 746, 748 (Iowa 1994))).

In this case, it is undisputed that Whitwer was entitled to the rights of a civil service employee—the Commission only points out that nothing in chapter 400 prevents Whitwer from *waiving* those rights, as the last-chance agreement clearly reflects. According to the Commission, Whitwer could have elected not to sign the agreement in October 2012, faced termination for the domestic abuse assault guilty plea, and then contested that termination. Instead, Whitwer signed the agreement and kept his job for thirteen additional months subject only to the conditions outlined in the agreement. So long as he entered into the agreement voluntarily, the Commission maintains that the agreement is valid and enforceable.

At the outset, we note that nothing in chapter 400 expressly bars agreements waiving civil service appeal rights. In certain other contexts, the legislature has declared that any purported waiver of statutory rights is void against public policy. *See, e.g.*, Iowa Code § 96.15(1) ("Any agreement by an individual to waive, release, or commute the individual's rights to [unemployment] benefits or any other rights under this chapter shall be void."); *id.* § 216E.6(2) ("Any waiver of rights by a consumer under this chapter is void."); *id.* § 322G.13 (declaring that a waiver of rights related to defective motor vehicles "is void as contrary to public policy"); *id.* § 579B.6 (providing that a waiver of the right to file a lien

under chapter 579B "is void and unenforceable"). However, no similar provision exists in chapter 400. Further, the relevant statutes indicate that the right to appeal the discharge is an individual right, to be exercised at the discretion of the employee. Section 400.20 provides that any suspension, demotion, or discharge "*may* be appealed to the civil service commission," *id.* § 400.20 (emphasis added), and notice is required "[*i*]*f* the appeal be taken," *id.* § 400.21 (emphasis added).

In the federal system, employees covered by the Civil Service Reform Act may be removed "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (2012). Federal law provides that "[a]n employee against whom an action is taken under [section 7513] is entitled to appeal to the Merit Systems Protection Board." *Id.* § 7513(d); *see id.* § 7701 (providing the procedures for appellate review); *see also Dep't of Navy v. Egan*, 484 U.S. 518, 526, 108 S. Ct. 818, 823 (1988) ("A removal for 'cause' embraces a right of appeal to the Board and a hearing of the type prescribed in detail in § 7701."). However, the United States Court of Appeals for the Federal Circuit—the circuit where many federal employment cases arise—regularly upholds and enforces last-chance agreements related to removals. *See, e.g., Buchanan v. Dep't of Energy*, 247 F.3d 1333, 1338, 1340 (Fed. Cir. 2001). So long as the agreement is validly executed, an employee's removal is predicated on a breach of the agreement, not whether the employee was removed for cause. *See Stewart v. U.S. Postal Serv.*, 926 F.2d 1146, 1148 (Fed. Cir. 1991); *see also Buchanan*, 247 F.3d at 1337, 1340 (affirming the removal of an employee for "failing to be on duty for a significant portion of the day"). Further, "[i]t is settled that an employee can waive the right to appeal in a last-chance agreement." *Buchanan*, 247 F.3d at 1338 (quoting *Gibson v. Dep't of Veterans Affairs*, 160 F.3d 722, 725 (Fed. Cir.

1998)); *see* Annotation, *Enforceability of Waiver of Right to Appeal in Federal Employees' Last Chance Agreement*, 16 A.L.R. Fed. 2d 593, 593 (originally published in 2007) ("It is well established that a federal employee can waive future appeal rights in a last chance agreement.").

A valid waiver-of-appeal provision in a federal last-chance agreement divests the Merit Systems Protection Board of jurisdiction, *Gilbert v. Dep't of Justice*, 334 F.3d 1065, 1070 (Fed. Cir. 2003), and the Federal Circuit applies basic contract principles in determining whether the agreement should be enforced, *Link v. Dep't of Treasury*, 51 F.3d 1577, 1582 (Fed. Cir. 1995) ("A last-chance agreement is a settlement agreement, and a settlement agreement is a contract."). Accordingly, in order to overcome the waiver-of-appeal provision, the federal employee must either prove compliance with the agreement, that he or she did not knowingly or voluntarily enter into the agreement, or that the agency breached the agreement. *Id.*; *see also Gilbert*, 334 F.3d at 1070 (recognizing that the employee has the burden of proof to establish jurisdiction). The employee may also demonstrate a last-chance agreement is invalid if the agency acted in bad faith. *Link*, 51 F.3d at 1582.

Significantly, federal courts recognize the validity of last-chance agreements despite several policy arguments similar to those raised by Whitwer in this case. *See McCall v. U.S. Postal Serv.*, 839 F.2d 664, 667–68 (Fed. Cir. 1988). In *McCall*, the Federal Circuit rejected the idea that last-chance agreements are inherently coercive due to unequal bargaining power between the employer and employee. *Id.* at 667; *see also Williams v. U.S. Postal Serv.*, 58 Fed. App'x 469, 471 ("The choice between removal and signing the agreement is inherent in any last chance agreement."). The court acknowledged that individuals "are often

forced to make difficult choices which effectively waive statutory or even constitutional rights." *McCall*, 839 F.2d at 667. Nevertheless, the court recognized that an employee obtains a substantial benefit from entering into a last-chance agreement: retaining employment and being given an opportunity to improve his or her conduct. *See id.* So long as the waiver is knowing and voluntary, the agreement simply "reflects a rational judgment on the part of [the employee]." *Id.*

In *McCall*, the Federal Circuit also addressed the argument that enforcement of last-chance agreements may incentivize agencies to bring disciplinary actions that "might otherwise not be sustainable before the board." *Id.* The court recognized the public interest at stake in allowing a full and fair consideration of all disciplinary actions; however, the court pointed out that a federal employee's right to appeal is a private decision of the employee. *Id.* Consequently, the court concluded, "We cannot say that the comparatively remote public interest in the effectiveness of the Civil Service Reform Act should displace [the employee's] knowing and voluntary decision that he would benefit personally from the agreement." *Id.*

Finally, the Federal Circuit rejected the idea that last-chance agreements are "contrary to the goals of the Civil Service Reform Act" and "open[ ] the door to completely subjective evaluation by the agency." *Id.* Specifically, the agreement in *McCall* required the employee to conduct himself in a manner "acceptable to management" or face removal. *Id.* at 665. As the court explained,

> We agree that the term "acceptable to management" does introduce an element of subjectivity into the agreement, but this does not mean that agencies would have a free hand to take arbitrary action against employees. We think it is implicit in the agreement here that the agency must abide by it in good faith. Thus, *the agreement itself serves as a check*

*on arbitrary agency action.* If an agency acts in bad faith or takes other arbitrary and capricious action, as a breaching party it would not be able to enforce the agreement.

*Id.* at 667 (emphasis added). The court also distinguished cases involving the waiver of *substantive* guarantees for individual employees, noting that the removal statutes at issue were directed only "to the *procedures* by which civil servants are hired and fired." *Id.* at 668; *cf. Callicotte v. Carlucci*, 698 F. Supp. 944, 946–47 (D.D.C. 1988) (concluding that a waiver of an employee's right to file a claim of workplace discrimination was invalid as contrary to public policy).

Likewise, several state courts have enforced last-chance agreements as a valid waiver of a civil service employee's rights related to the termination of employment. *See, e.g., Muth v. City of Leominster*, No. 12–P–1498, 2013 WL 3939948, at *1 (Mass. App. Ct. Aug. 1, 2013); *Chilefone v. Metro. Council*, No. C0-02-2260, 2003 WL 21694564, at *3 (Minn. Ct. App. July 22, 2003); *Watson v. City of East Orange*, 815 A.2d 956, 957–58 (N.J. 2003) (per curiam) (enforcing the terms of an agreement in part because "[a] contrary conclusion likely would chill employers from entering into last chance agreements to the detriment of future employees"); *Abramovich v. Bd. of Ed.*, 386 N.E.2d 1077, 1079–80 (N.Y. 1979) ("[W]hen a waiver is freely, knowingly and openly arrived at, without taint of coercion or duress, the sturdy public policy underpinnings of section 3020-a are not undermined."); *Monahan v. Girouard*, 911 A.2d 666, 672–73 (R.I. 2006); *City of Yakima v. Yakima Police Patrolmans Ass'n*, 199 P.3d 484, 490 (Wash. Ct. App. 2009). At least two other states expressly authorize waiver by statute. *See McCollins v. Cuyahoga County*, 20 N.E.3d 1221, 1225 n.3 (Ohio Ct. App. 2014) ("The statute and case law treat Last Chance Agreements like any other contract . . . ."); *City of Austin Firefighters' and Police Officers' Civil*

*Serv. Comm'n v. Stewart*, No. 03–15–00591–CV, 2016 WL 1566772, at *3 (Tex. App. Apr. 14, 2016) (recognizing that when an agreement authorized by statute addresses disciplinary actions, it "supersedes any contrary statute, ordinance, or rule, including provisions under the [Civil Service] Act"); *see also* Ohio Rev. Code Ann. § 124.34(B) (West, Westlaw current through 2017 File 5 of the 132d Gen. Assemb.); Texas Loc. Gov't Code Ann. §§ 143.306–.307 (West, Westlaw current through chapters effective immediately through Chapter 34 of the 2017 Reg. Sess.).

Whitwer cites only one example of a state court that declined to enforce an employee's waiver of termination rights in a last-chance agreement. *See Farahani v. San Diego Comm. Coll. Dist.*, 96 Cal. Rptr. 3d 900, 905–06 (Ct. App. 2009). However, *Farahani* is easily distinguishable because such waivers in California are expressly prohibited by statute, a circumstance which does not exist in Iowa under chapter 400. *Id.* at 905 ("By its terms, section 87485 renders null and void *any* agreement to waive the benefits of Chapter 3, 'Employment.' ").

We find the reasoning from *McCall* persuasive and conclude that a last-chance agreement waiving civil service appeal rights afforded to a civil service employee under chapter 400 can be valid and enforceable.

Here, the district court concluded that while a municipal government may enter into a last-chance agreement with an employee, such an agreement is not effective until the Commission has had an advance opportunity to review and approve the agreement. However, this notion bends the duties and responsibilities of the Commission too far. No provision in chapter 400 authorizes the Commission to review and approve such agreements or provides it with standards for doing so. Rather, the Commission acts in an adjudicatory capacity when it reviews the removal, demotion, or suspension of a civil service employee. *Sieg,*

342 N.W.2d at 828. This review process is predicated on a sanction having already occurred. *Cf. Bevel v. Civil Serv. Comm'n*, 426 N.W.2d 380, 383 (Iowa 1988) (concluding that the appeal time in section 400.20 begins once the employee receives notice of the sanction).

We also do not accept that a last-chance agreement becomes arbitrary simply because the municipality retains discretion whether to offer the agreement. Primarily, this ignores the fact that the employee has comparable discretion to *reject* the agreement, if and when offered. Further, any disciplinary decision begins with an exercise of discretion by the municipality in any event. The City should retain discretion to determine whether to offer an employee an opportunity to remain on the job through a last-chance agreement despite otherwise "removable" misconduct. For example, in this case, Whitwer was described as having an exemplary record of nearly two decades before committing assault in 2012. *See id.* at 382 (construing chapter 400 liberally to "assist the parties in obtaining justice").

Of course, a civil service employee does not waive any rights protected by chapter 400 if the agreement itself is invalid. Because a last-chance agreement is essentially a settlement agreement, general principles of contract law should apply to their creation and interpretation. *See Estate of Cox v. Dunakey & Klatt, P.C.*, 893 N.W.2d 295, 302 (Iowa 2017); *see also Rick v. Sprague*, 706 N.W.2d 717, 723 (Iowa 2005) ("[W]e also look to contract principles when we interpret offers to confess judgment.").

**B. The October 2012 Agreement.** The district court determined the last-chance agreement was invalid as a matter of law since it lacked the Commission's prior imprimatur. Thus, the court did not reach the issue of whether the agreement was otherwise enforceable and valid.

Whitwer does not dispute that he violated the no-contact order, which resulted in a direct violation of the last-chance agreement.

Whitwer instead characterizes the circumstances surrounding his signing the agreement as "incredibly problematic." Whitwer points out that the meeting was rescheduled at the last minute from October 5 to October 1, and that his personal attorney was not present. He also claims that he was under stress when the document was signed and faced a "Hobson's choice": either sign the agreement "as is," or be terminated.

Upon our de novo review, we are satisfied that Whitwer entered into the agreement voluntarily, knowingly, and intelligently. The agreement provided a significant benefit—continued employment with a five-shift suspension in lieu of termination proceedings. The fact that Whitwer's attorney was not present when he signed the agreement is not controlling. Whitwer's attorney was informed of the terms of the last-chance agreement before the hearing, and no objection was raised to his absence. Whitwer's interests were represented by two union officials at the hearing. Whitwer was given ample time, outside the presence of any City personnel, to review the agreement with the union officials. Except for the scheduling of his shift suspensions, Whitwer raised no questions or concerns about the agreement despite several opportunities to do so. On these facts, we conclude that Whitwer agreed to the last-chance agreement and was fully aware of both its benefits and its consequences.

It is also notable that in this case, the violation of the last-chance agreement occurred a little over a year after the agreement was signed and was connected to the misconduct underlying the original disciplinary proceeding. Additionally, first responders often have to deal with volatile in-home situations, including incidents of domestic violence. Thus, full

public confidence in the ability of first responders to perform these functions is particularly important.

We do not foreclose the possibility that in a different case in the future, such as a case involving a significant lapse of time or a de minimis or unrelated breach, attempted enforcement of the last-chance agreement might be contrary to public policy or might violate the duty of good faith and fair dealing. *See McCall*, 839 F.2d at 667 ("[I]t is implicit in the agreement here that the agency must abide by it in good faith. Thus, the agreement itself serves as a check on arbitrary agency action."). Such a case is not before us today and we do not address it in today's opinion.

## IV. Conclusion.

For the above reasons, we conclude the last-chance agreement signed by Whitwer was valid and enforceable. Accordingly, we reverse the judgment of the district court and uphold the City's termination of Whitwer's employment under the circumstances of this case. *See Lewis*, 776 N.W.2d at 865.

**REVERSED.**

All justices concur except Appel and Hecht, JJ., who dissent.

**APPEL, Justice (dissenting).**

Iowa Code section 400.30 (2013) states, "The provisions of this chapter shall be strictly carried out by each person or body having powers or duties thereunder." If the provisions of the Code are to be strictly carried out, it seems to me a person

> shall not be removed, demoted, or suspended arbitrarily, except as otherwise provided in this chapter, but may be removed, demoted, or suspended after a hearing by a majority vote of the civil service commission, for neglect of duty, disobedience, misconduct, or failure to properly perform the person's duties.

*Id.* § 400.18(1).

The Iowa legislature has clearly provided, except for certain exceptions not applicable here, termination may occur only "after a hearing by a majority vote of the civil service commission for neglect of duty, disobedience, misconduct, or failure to properly perform the person's duties." *Id.* That did not happen here.

I do not think the parties can agree to opt out of the system because they think their agreement is more beneficial than the statutory framework. The majority suggests last-chance agreements are at least sometimes good for the employee and good for the public employer. Perhaps so. But that is not the question. The question here is a simple one: Does the statute authorize dismissal of an employee without a majority vote of the civil service commission after a hearing for the enumerated causes? There is nothing in the statute allowing the parties to finesse this language.

The majority opinion declares there is nothing in the statute prohibiting last-chance agreements. There is no such specific language dealing with last-chance agreements. But the fact the language of Iowa

Code section 400.18(1) is broad and not narrow does not defeat its application to last-chance agreements that do not provide for a hearing and vote by a majority of the civil service commission.

The majority correctly points out the civil service statute does not expressly declare waivers are void as do many other statutes. That is a fair point. But it also does not expressly authorize last-chance agreements, as do some civil service statutes. In any event, the failure to provide such a declaration does not eviscerate the mandatory provisions of Iowa Code section 400.18(1), which the legislature has instructed the participants to strictly enforce. I do not think it can be fairly said this provision has been strictly enforced in this case.

For these reasons, I would affirm the judgment of the district court. Tinkering with the statute should be left to the legislature.

Hecht, J., joins this dissent.