NEUBAUER, C.J.
¶ 1 The City of Fond du Lac and its police chief, William Lamb, appeal from a judgment directing the reinstatement of one of its police officers, Curt Beck, who the City had discharged without following the Police and Fire Commission (PFC) procedure set forth in WIS. STAT. § 62.13(5) (2015-16).[1] The City contends Beck waived the statutory PFC procedure when he previously settled a disciplinary matter involving allegations of dishonesty by entering into a "Last Chance Agreement" (LCA), a term of which replaced the PFC procedure with an alternative one for any future allegations of job-related dishonesty. We agree, concluding that Beck intentionally, knowingly, and explicitly relinquished the PFC procedure. We therefore reverse and remand.
BACKGROUND
¶ 2 In early 2014, Beck was the subject of a police department investigation essentially related to his honesty. Beck and the City engaged in negotiations to settle the matter. If no settlement was reached, the City would have filed charges with the PFC, pursuant to WIS. STAT. § 62.13(5), seeking Beck's discharge.
¶ 3 In April 2014, the parties reached a settlement. As part of the deal, they executed an LCA by which Beck agreed that certain "untruthful conduct" by him would constitute "cause" for immediate discharge, any investigation into such alleged conduct would include a Loudermill[2] hearing, any disciplinary action would not be subject to the PFC procedure of WIS. STAT. § 62.13(5), and Beck could appeal the investigation's factual findings to the Wisconsin Employment Relations Commission (WERC).[3] In addition, after a short suspension, Beck would keep his job.
¶ 4 In June 2014, the department began a new investigation into whether Beck had been dishonest in relation to his job, possibly violating the LCA. In July 2014, the City held a Loudermill hearing during which Beck was questioned regarding his alleged dishonesty. At the hearing, the City determined Beck had been dishonest in violation of the LCA, and Lamb told him that his employment would end immediately.[4] The City told Beck that it "would not process the final paperwork for [his] separation" for a few days so Beck could consider resigning, which would preserve his vacation pay. The City also advised Beck that, under the LCA, he could appeal its findings to WERC.
¶ 5 Beck tendered his resignation to preserve his vacation pay, but also filed a grievance with WERC, challenging the City's determination that he violated the LCA. The City moved to dismiss, asserting Beck had not been disciplined under the LCA. The WERC arbitrator agreed and granted the motion, essentially concluding it lacked jurisdiction because Beck chose to resign rather than be disciplined under the LCA.
¶ 6 In March 2015, Beck commenced this action, seeking a writ of mandamus ordering his reinstatement. He alleged the LCA was based on "mutual mistake, illusory consideration, and illegality." He contended the LCA was void and unenforceable because it did not comply with the procedure for termination under WIS. STAT. § 62.13(5).
¶ 7 In October 2015, the circuit court held an evidentiary hearing, but cut it short after "clarif[ying] with the parties that there really wasn't a dispute as to the majority of the facts." The court asked for briefing on whether the LCA was legally enforceable in light of the statutory PFC procedure for terminations. In December 2015, the court determined the City terminated Beck's employment, the LCA was impermissible because it contravened the exclusive disciplinary procedure of WIS. STAT. § 62.13(5), and Beck should be reinstated to his job. In denying the City's subsequent motion to reconsider, the court explained "what the [LCA] did was not legal in that the only way for a law enforcement officer to be terminated is for charges to be brought in front of the [PFC]. So the agreement was not even legal."
DISCUSSION
Standard of Review and the Statutory PFC Procedure
¶ 8 "In order for a writ of mandamus to be issued, four prerequisites must be satisfied: (1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law." Pasko v. City of Milwaukee , 2002 WI 33, ¶ 24, 252 Wis. 2d 1, 643 N.W.2d 72 (citation omitted). The burden to make this showing rests with the person seeking the writ. Vretenar v. Hebron , 144 Wis. 2d 655, 662, 424 N.W.2d 714 (1988). Whether public policy renders a contract void or unenforceable-which was the circuit court's basis for issuing the writ here-is a question of law, which we decide independently. See Jezeski v. Jezeski , 2009 WI App 8, ¶¶ 10-11, 316 Wis. 2d 178, 763 N.W.2d 176 (2008).
¶ 9 We first summarize the statutory PFC procedure at issue. Municipalities must set up and maintain a PFC with jurisdiction over the hiring, promotion, discipline, and discharge of officers.[5] WIS. STAT. § 62.13(1) & (5). Under this statutory framework, an officer may not be disciplined unless written charges are filed (usually by the police chief) with the PFC, the PFC promptly holds a public hearing with a right to compel witness attendance, and the PFC "determines whether there is just cause ... to sustain the charges" of misconduct. Sec. 62.13(5). That determination includes reviewing seven standards and considerations (e.g., whether the rule that was violated was reasonable, whether reasonable efforts were made to discover if a violation occurred, and whether the proposed discipline is reasonable). Sec. 62.13(5)(em).
Beck Intentionally, Voluntarily, and Clearly Waived the PFC Procedure
¶ 10 The City argues Beck waived the statutory PFC procedure when, in exchange for leniency during the disciplinary investigation in early 2014, he agreed to the terms of the LCA which used a Loudermill hearing process in place of the PFC process for any subsequent allegations of untruthful conduct. We agree.
¶ 11 In general, a waiver occurs when a person intentionally relinquishes or abandons a known right. Ceria M. Travis Academy, Inc. v. Evers , 2016 WI App 86, ¶ 23, 372 Wis. 2d 423, 887 N.W.2d 904. Absent an applicable public policy limitation, a waiver can be made of "most any statutory right" provided that "the waiver is intentional, voluntary and is a clear and specific renunciation."Id. (citations omitted).
¶ 12 Beck's relinquishment of his right to the statutory PFC procedure for "untruthful conduct" was intentional, voluntary, clear, and specific. When Beck faced allegations of dishonesty in early 2014, he was undisputedly free to contest them through the statutory PFC procedure had charges been filed. He chose, instead, to enter into settlement negotiations. Represented by legal counsel throughout, Beck reached an agreement with the City, the terms of which were also agreed to by Beck's union.
¶ 13 Per the settlement, the City promised not to file charges with the PFC seeking Beck's termination for the alleged misconduct, and it permitted Beck to keep his job after a short suspension. In exchange, Beck agreed to the Loudermill hearing process in the event he was subsequently investigated for untruthful conduct as set forth in the LCA. Beck could challenge adverse findings with WERC. Specifically, the LCA-which was in writing and signed by Beck, his union, and the City-stated that a disciplinary action under the LCA "shall not be subject to any grievance procedure or statutorily prescribed procedure for challenging discipline ... [but that] said waiver does not preclude ... Beck from" filing a challenge with WERC. (Emphasis added.) The LCA further stated that the parties made the agreement "voluntarily," had a "full opportunity to review" it with a chosen representative, and the terms were "final and binding."
Beck Fails to Show that Public Policy Bars his Waiver of the PFC procedure in the LCA
¶ 14 Beck does not deny that his waiver was intentional, voluntary, clear, and specific. He argues, instead, that the statutory PFC procedure simply could not be waived via the LCA for allegations of misconduct as a matter of law, as it would contravene public policy. "The parties created an illegal contract," Beck asserts, "through their own ignorance," making the LCA void and unenforceable.[6]
¶ 15 We are unpersuaded. Although Beck discusses at length the importance of the statutory PFC procedure and the need for fairness in officer disciplinary decisions, he fails to provide legal support that public policy precluded his intentional and voluntary waiver in the LCA of the PFC procedure.
¶ 16 Beck quotes from employment cases that point up the exclusive and mandatory nature of WIS. STAT. § 62.13(5), see, e.g. , City of Janesville v. WERC , 193 Wis. 2d 492, 502, 535 N.W.2d 34 (Ct. App. 1995) (by statute, "the PFC has the ultimate authority to suspend subordinates and the exclusive authority to reduce in rank and remove subordinates"), but he does not take the next step and assert, much less show, that a procedure that is exclusive and mandatory is also necessarily individually unwaivable. He provides no statutory analysis that would support his position, and none of the employment cases cited by him address waiver of statutory procedures or rights.
¶ 17 In less than clear fashion, both Beck and the City refer for support to Faust v. Ladysmith-Hawkins School Systems , 88 Wis. 2d 525, 277 N.W.2d 303, on motion for reconsideration , 88 Wis. 2d 525, 281 N.W.2d 611 (1979) (per curiam). Beck argues that Faust holds that, where a statutory procedure protects both a private interest and a public policy purpose, it cannot be waived. We disagree that Faust is dispositive.
¶ 18 In Faust , a school district argued that a teacher, who challenged the nonrenewal of her one-year contract, waived her statutory rights for notice and a private conference because her contract stated it would not be renewed. Concluding there was no voluntary and knowing waiver, the Faust court reasoned that the nonrenewal language was not a term of the contract, but a "statement of understanding," that any relinquishment of the rights was not express, and that there was nothing to show that the teacher knew of these rights. Id. at 532-33.
¶ 19 Faust does not render Beck's waiver invalid. Critically absent in Faust were showings that the teacher's alleged waiver was express, knowing, and clear. Here, Beck effectively concedes that these elements of waiver are satisfied.
¶ 20 Beck instead relies on Faust 's additional and unnecessary comment and explanation that, even if Faust had known of her rights, a waiver would be ineffective. "Where a statutorily created private right serves a public policy purpose, the persons or entities protected by the statute cannot waive the right." Id. at 533. However, Beck overlooks the supreme court's subsequent per curiam decision on a motion for reconsideration that informs and narrows these statements. Namely, the court reviewed a concern that language in its opinion "could be construed to hold that in no circumstances could a teacher waive the [applicable statutory rights]." Id. at 537. The court "confined" its holding to the facts of the case, i.e., a nonrenewal provision in a teacher's contract does not waive the teacher's statutory procedural rights. Id. at 537-38. The court clarified that "[w]e do not suggest that a teacher who has been given a preliminary notice of nonrenewal does not have the right to waive the subsequent [statutory procedural rights]. That question and other questions of waiver not raised by the facts of this case are left undecided." Id. at 538.
¶ 21 Plainly, the question here is a "question[ ] of waiver not raised by the facts of" Faust .[7] Unlike the one-year nonrenewal contract provided upon employment to Faust, Beck was aware of his statutory procedural rights and had an opportunity to avail himself of that procedure when he faced misconduct allegations in 2014. Beck undisputedly waived those procedural rights in a knowing and unequivocal fashion both as to the allegations of dishonesty that were pending and to those that may be asserted in the future, and he did so in exchange for leniency in a disciplinary matter. Clearly, the public policy analysis applicable to the alleged waiver upon employment, as in Faust , is markedly different than a public policy analysis applicable to a knowing and intentional waiver in the context of settlement of misconduct allegations.[8]
¶ 22 Beck simply does not offer support for a determination that public policy negates his knowing and unequivocal waiver of the statutory PFC process. It is Beck's burden to establish that a writ of mandamus-"an extraordinary legal remedy"-should issue, which requires the showing of a "positive and plain" duty to enforce a "clear legal right." See Vretenar , 144 Wis. 2d at 662. Such a showing here runs uphill, as Wisconsin favors enforcing a contract agreed to by competent parties, and a court will set a contract aside "on grounds of public policy only in cases free from doubt." Jazeski , 316 Wis. 2d 178, ¶ 11 ; Northern States Power Co. v. National Gas Co. , 2000 WI App 30, ¶ 8, 232 Wis. 2d 541, 606 N.W.2d 613. Although hard to define, public policy is "that principle of law under which freedom of contract or private dealings is restricted by law for the good of the community," sources of which include statutes, administrative rules, and common law. Atkins v. Swimwest Family Fitness Ctr. , 2005 WI 4, ¶ 14, 277 Wis. 2d 303, 691 N.W.2d 334 ; Northern States Power Co. , 232 Wis. 2d 541, ¶ 8.
¶ 23 Perhaps the closest Beck comes to identifying a public policy violation is his assertion that the waiver was for future allegations of dishonesty under the LCA. Beck concedes that an officer may, during an investigation for past misconduct, accept discipline for the alleged misconduct in lieu of having charges filed with the PFC. "That is simply a settlement," Beck suggests. Waiving the PFC procedure, however, in advance of any alleged misconduct violates the law and public policy, Beck argues, and could be used improperly, for example, by a police chief as a condition of employment.
¶ 24 Beck's argument, however, is merely theoretical, as he neither develops nor supports it. A prospective officer forsaking statutory PFC rights to land a job are not the facts before us. Moreover, not a single case or other legal authority is cited for our consideration. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (arguments undeveloped or unsupported by relevant legal authority will not be considered on appeal).
¶ 25 To hold the LCA void on public policy grounds would require a full and on-point analysis, which is not offered by Beck. The lack of briefing notwithstanding, it is clear that a substantial amount of case law exists on so-called "last chance" or "second chance" agreements. The Iowa Supreme Court recently issued a thoughtful and thorough opinion, concluding a firefighter may prospectively waive statutory hearing rights via a last chance agreement in order to avoid termination proceedings and keep his job. Whitwer v. Civil Serv. Comm'nof Sioux City , 897 N.W.2d 112 (Iowa 2017). The Whitwer court observed that nothing in the statutes barred such an agreement.[9] Id. at 119, 121. The court then collected and discussed federal and state court cases on such waivers and agreements, a review of which indicated that the primary avenues to challenge a waiver are the employee's compliance or the employer's noncompliance with the agreement, the waiver was not knowing or voluntary, and the employer acted in bad faith. Id. at 119-121. Whitwer noted the regular upholding of such agreements despite arguments made on public policy grounds. Id. at 120. In these cases, courts have referred to the agreement's significant benefit to the employee-keeping a job that he or she would have otherwise lost-and the risk that voiding such agreements "would chill employers" from offering last chances, ultimately "to the detriment of future employees." Id. at 120-21 (citations omitted).
¶ 26 Although of course not controlling, Whitwer points up the type of analysis a party should provide when pressing to void an otherwise valid LCA on public policy grounds. Beck fails to address how the public's interest is undermined in any way, when he knowingly waived his statutory rights and derived a significant benefit in return. We will not generate or expand on arguments for either side. See Milwaukee Metro. Sewerage Dist. v. City of Milwaukee , 2005 WI 8, ¶ 87 n.30, 277 Wis. 2d 635, 691 N.W.2d 658 (declining to consider the argument that liability should be denied on public policy grounds, as the party's one-page analysis was inadequate). We conclude that Beck has not shown a violation of a "positive and plain" duty to enforce a "clear legal right."
¶ 27 In seeking reversal of the circuit court's decision, the City advanced several arguments in addition to waiver, such as requesting severance of any illegal portion of the LCA, asserting that Beck chose to resign and was not terminated, and disputing the court's determination that the parties made a mutual mistake when entering into the LCA. In light of our holding, we need not and do not address any other arguments. See Summers v. Touchpoint Health Plan, Inc. , 2006 WI App 217, ¶ 20, 296 Wis. 2d 566, 723 N.W.2d 784 (resolving an issue that was dispositive obviated the need to resolve other issues).
By the Court. -Judgment reversed and cause remanded.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version. For ease of reference, we will typically refer to the City and Lamb collectively as "the City."

Cleveland Bd. of Educ. v. Loudermill , 470 U.S. 532, 542, 546 (1985) (before discharging an employee with a constitutionally protected employment interest, due process requires notice and "some kind of hearing" to afford "[t]he opportunity to present reasons ... why proposed action should not be taken").

The LCA provides in pertinent part:
From the date of this Agreement and for the duration of his employment with the City, Beck agrees to serve a period of last chance. During this period of last chance, Beck agrees that should he be found to have engaged in any dishonest or otherwise untruthful conduct towards a coworker, or in any official capacity as a member of this Department that violates Department policies regarding said conduct, such conduct shall be "cause" for immediate discharge pursuant to any collectively bargained agreement between the City and Association [Beck's union] or otherwise....
The City agrees to conduct an investigation into any allegations that Beck has violated the terms of this agreement that includes a Loudermill hearing with Beck prior to a disciplinary decision. Beck and the Association agree that should the City exercise its rights under this [p]aragraph ... such disciplinary action shall not be subject to any grievance procedure or statutorily prescribed procedure for challenging discipline whether part of a collectively bargained agreement between the City and Association or not. However, said waiver does not preclude the Association or Beck from challenging the accuracy of factual findings from the investigation with the Wisconsin Employment Relations Commission.

There is a dispute over whether Beck was terminated or resigned, a dispute which we need not address given our holding.

With certain exceptions, the requirement of a PFC system does "not apply to cities of less than 4,000" people. Wis. Stat. § 62.13(2).

There are no allegations the City, by either entering into or enforcing the LCA, acted in bad faith. Beck actually acknowledges the City's "good faith."

Although we disagree with the circuit court's conclusion the LCA was illegal and void for circumventing the statutory PFC procedure, we note the circuit court had to unravel difficult legal issues with briefing that was not sufficiently comprehensive. Illustrative of this was the parties' treatment of Faust v. Ladysmith-Hawkins Sch. Sys. , 88 Wis. 2d 525, 277 N.W.2d 303, on motion for reconsideration , 88 Wis. 2d 525, 281 N.W.2d 611 (1979) (per curiam). In its trial brief, the City cited Faust for the proposition that a statutory right can be waived, whereas Beck noted Faust 's statement that statutory rights "cannot" be waived. Significantly, neither party advised the circuit court about Faust 's reconsideration opinion, which limits its holding to the facts and states that other circumstances may permit waiver. Id. at 537-38. Likewise, neither parties' initial appellate briefs cited to, much less discussed, Faust 's reconsideration opinion. It was not until its reply brief that the City offered a paragraph on that important point.

Beck cites Deputy v. Lehman Bros., Inc. , 374 F.Supp. 2d 695, 709-10 (E.D. Wis. 2005). Although not controlling, Deputy actually more closely supports the City's position than Beck's. As relevant here, Deputy concluded that statutory rights can be waived in Wisconsin provided the waiver is intentional, voluntary, and clear, and it cited to Wisconsin cases that discussed the waiving of such rights. Id. at 709 (citing Jones v. Jones , 2002 WI 61, ¶ 17, 253 Wis. 2d 158, 646 N.W.2d 280 and Reist v. Reist , 91 Wis. 2d 209, 223-24, 281 N.W.2d 86 (1979) ). Deputy went on to hold the plaintiff-investor waived, through an arbitration agreement, the statutory protections of the Uniform Transfers to Minors Act. Deputy , 374 F.Supp. 2d at 709-10. Having stated that statutory rights can be waived, found that the plaintiff knowingly and clearly waived them, and concluded that public policy did not prohibit the waiver, Deputy provides no basis to determine that Beck's waiver was prohibited.

Beck does not suggest that any provision of Wis. Stat. § 62.13 prohibits his waiver. When it sees fit, the Wisconsin Legislature has restricted or barred the waiver of certain rights or benefits. See, e.g. , Wis. Stat. § 108.12 (no waiver by an employee of unemployment insurance rights "shall be valid"); Wis. Stat. §§ 421.106(1) and 422.506 (barring or voiding waiver of certain consumer rights); and Wis. Stat. § 779.135 (voiding certain provisions in contracts for the improvement of land, including waivers of construction liens).